### NEESON *et al.* v. BRAY *et al.*

*(Superior Court of Buffalo, General Term. July 8, 1892.)*

PUBLIC STATUTES—NOTICE—NARROWING STREETS—COVENANT OF QUIET POSSESSION.

Laws 1850, c. 116, extending the lot lines of all lots on certain streets 16½ feet towards the center of the streets, so that the streets should be contracted from 99 feet in width to 66 feet, and empowering the city council to authorize the use of the 16½ feet strips for courtyards, but forbidding the erection of buildings thereon, is a public statute; and one who takes a deed of a lot on one of said streets referred to in the deed as four rods wide is presumed to know of the limitation on his rights, and is therefore estopped from maintaining an action for breach of covenant of quiet and peaceable possession on account of such limitation.

Appeal from trial term.

Action by John Neeson and Mary F. Neeson against Elizabeth C. Bray and Columbus Bray. Judgment for defendants. Plaintiffs appeal. Affirmed.

Argued before TITUS, C. J., and WHITE, J.

*Laughlin, Ewell & Houpt,* for appellants. *John M. Chipman,* for respondents.

TITUS, C. J. This action is brought to recover damages for a breach of the covenant of quiet and peaceable possession of a deed given by the defendants to the plaintiffs of premises situated on the southeast corner of Prospect avenue and Massachusetts street in this city. On the 25th day of February, 1887, the defendants conveyed to the plaintiffs by deed containing a covenant of quiet and peaceable possession a lot of land described as being 56½ feet on Prospect avenue and 116⅔ feet on Massachusetts street, each of said streets being referred to as a four-rod street. The plaintiff commenced to make excavations on the line of Prospect avenue as a four-rod street for the purpose of erecting a building, and while his employes were engaged in digging for the foundation walls he was forbidden by the city authorities to build on the 16½ feet of the Prospect avenue front, and was ordered to place his building back on the line of the street as a 99-foot street. Police officers were sent upon the ground, and the plaintiff was threatened with arrest if he persisted in going on with his building. It appears that Prospect avenue (formerly Ninth street) and Massachusetts street were originally laid out 99 feet wide. The legislature, in 1850, passed an act (chapter 116) extending the lot lines of all lots fronting on streets crossing Niagara street at right angles 16½ feet towards the center of such streets, so that such streets should be contracted from their then present width of 99 feet to 66 feet. The lots lying on each side of such streets so contracted in width were extended and bounded upon the lines of the streets so altered. By the third section of the act it was provided "that it shall be lawful for the common council of the city of Buffalo, and for the board of trustees of the village of Black Rock, in respect to the lands lying within their corporate limits, respectively, to authorize and direct

the owners and occupants of any lands lying within the said south village of Black Rock and fronting upon Seventh or Ninth streets (now Prospect avenue) to inclose and cultivate as ornamental or court yards sixteen and one-half feet as bounds said lots in front of the same: provided, however, it shall not be lawful to erect any building within the lines of said streets." By this act the right of the people in these streets for street purposes was relinquished, but as to streets crossing Niagara street at right angles it was necessary to get the consent of the common council of the city of Buffalo, or of the trustees of the village of Black Rock, to extend the lot lines as contemplated by the act; and as to lands lying on Seventh street and Prospect avenue the common council of the city of Buffalo and the trustees of the village of Black Rock were empowered to authorize the owners of lands fronting upon these streets located within their respective corporation limits to inclose and cultivate as ornamental courtyards the 16½ feet of such streets immediately in front of their lands, but the municipal authorities could not authorize the erection of any buildings on the 16½ feet.   In 1869 (chapter 741) the legislature amended this act in some particulars not affecting the questions under consideration, and further enacted that the interests of the people of this state be released to the owners in the 16½ feet on each side of the streets crossing Niagara street at right angles in the south village of Black Rock, excepting the lots fronting on Georgia street, thus narrowing the streets to 66 feet in width, and vesting the absolute title to the 16½ feet in abutting lot owners, so that now the only streets which are subject to the condition of the qualified ownership are Seventh street and Prospect avenue, and so much of the land described in the deed as fronts on Massachusetts street was conveyed to the plaintiff by a good and absolute title.

The question, then, is, what is the effect of the covenant of quiet and peaceable possession contained in the deed upon the strip 16½ feet wide on Prospect avenue?  If this was an action for fraud in the sale of land, different questions might arise, but the action is for a breach of the covenant in the deed, and not in fraud.   *Wardell* v. *Fosdick*, 13 Johns. 325; *Whitney* v. *Allaire*, 1 N. Y. 305.   The only breach of the covenant complained of is the restriction found in the statute prohibiting the owners from building upon this 16½ feet strip.   The evidence which was rejected by the court all related to representations made by the defendant at the time of the sale, and, in the view taken of this case, the representations were immaterial, because no fraud is alleged in the transaction; and whether there was a breach of covenant in the deed is not material if we are right in holding that the statute is a public one, of which the plaintiff must take notice, because in that case he contracts, having in view the fact of the limitation upon the use of the property, and is estopped from claiming a right to recover for a defect in the title of which he had knowledge.   *Bennett* v. *Buchan*, 76 N. Y. 386.   It is claimed by the plaintiff that these acts are private, and not public, acts, and that, if they are private acts, parties are not bound to take notice of them.   It has been said that a public act is one which relates to the state at large, and a private act to certain individuals or a particular class of men.   It operates upon a particular thing or private person.   It does not bind strangers in interest to its provisions, and they are not bound to take notice of it.   Kent, Comm. 459.   But the rule with reference to public acts is that all persons are bound to take notice of them, and are presumed to know them.   *Van Schoonhoven* v. *Curley*, 86 N. Y. 187; Kent, Comm. 460; *Platt* v. *Crawford*, 8 Abb. Pr. (N. S.) 297; *Jackson* v. *Catlin*, 2 Johns. 263.   Private statutes act upon the private affairs of individuals, as distinguished from their attitude or relation to the public.   As to such acts, the courts and the public are not presumed to know them, or to be bound by them, and they must be proved like any other fact in a case.   *Platt* v. *Crawford*, *supra*; Kent, Comm. 460.   Many cases have arisen in which the question whether the act was public or private has been

considered. In one case it was said that an act which relates to persons or things as a class in general is public, but one which relates to particular persons or things of a class is special and private. *In re New York El. R. Co.*, 70 N. Y. 350. An act in reference to a single corporation would be a private act, but one affecting all corporations would be public. *White* v. *Railroad Co.*, 14 Barb. 563. A statute giving a party the right to erect a dam across a stream is a private statute. There is no presumption that such statutes are generally known, and courts do not take judicial notice of them. *Groat* v. *Moak*, 94 N. Y. 115. A statute releasing the interest of the state in a certain piece of land is a private statute. *Johnston* v. *Spicer*, 107 N. Y. 201, 13 N. E. Rep. 753. But it was held that, where a road was discontinued by the legislature, such an act of discontinuance was a public statute. *Wheeler* v. *Clark*, 58 N. Y. 267–272; *King* v. *City of New York*, 102 N. Y. 171, 6 N. E. Rep. 395. In the latter case it was held that parties dealing with property affected by such an act were bound to know that a public highway no longer existed, and presumed to have bought and fixed the price of the land in view of that fact. On a contract for the sale of 100 barrels of salt it was held that the size of the barrels is understood and intended to be the size prescribed by the statute, and that the parties were bound to take notice of it. *Clark* v. *Pinney*, 7 Cow. 681. The statute in this case affected a large number of persons owning property on Seventh street and Prospect avenue. It related to a class of persons who were similarly situated. It was of public interest, and it affected the rights of the public in those streets by depriving the public of the use of two rods of land which had heretofore been devoted to the public use; and from the reasoning of the courts in the numerous cases where this question has been under consideration, it is concluded that the object and intent of the act of 1850 was and did affect the public interest, and distinguished from an act which affected private individuals or private rights only. Such being the case, a party purchasing land is presumed to know of the existence of the law, and to have purchased with the knowledge and in view of it. In the absence of fraud, this presumption becomes conclusive upon the purchaser, and he is not permitted to make proof of his want of knowledge. *Bank* v. *Davis*, 2 Hill, 451; *Williamson* v. *Brown*, 15 N. Y. 354; *Adams* v. *Conover*, 87 N. Y. 422; *Bennett* v. *Buchan*, 76 N. Y. 386; *Bank* v. *Delano*, 48 N. Y. 326. It is probably true that the limitation of the use of the 16½ feet of the land described in the deed to the plaintiff to yard and ornamental purposes deprived the plaintiff of a substantial right in the land, and for some purposes diminishes its value; but the law presumes he purchased with knowledge of the facts, and consequently he is estopped from asserting the contrary, and cannot recover in an action for a breach of the covenant of quiet and peaceable possession, although the acts of which he complains may be sufficient to warrant the court in finding that there was in fact a breach of the covenant. It follows, therefore, if this view of the law is correct, that the judgment should be affirmed, with costs.