ESTELLE P. ANDERSON, Respondent, v. STEINWAY & SONS, Appellant.

THE CITY OF NEW YORK, Amicus Curiae.

First Department, June 8, 1917.

**Vendor and purchaser — specific performance of contract to convey land — effect of municipal ordinance regulating use of land enacted between date of contract and consummation thereof — when purchaser will not be compelled to take property — when municipal ordinance may be attacked as unreasonable.**

Where an owner of a plot of land agrees to convey free from all incumbrances, except a covenant against nuisances, and the purchaser agrees to buy upon said terms, intending to erect upon the property a business building, and having no other use for the property, and at the time of the execution of the contract there is no restriction upon the use to which the property may be put except the covenant aga'nst nuisances, and between

said date and the day upon which the sale is to be consummated the board of estimate and apportionment of the city of New York, acting under legislative authority, adopts a resolution preventing the use of the property intended by the purchaser, which resolution could not have been reasonably anticipated by the parties, a court of equity will not compel the purchaser to specifically perform his agreement.

As a general rule, a purchaser will not be compelled to take property, the possession of which he will be obliged to defend by litigation.

The resolut on of the board of estimate and apportionment adopted under authority of the Legislature, but not specifically ratified after adoption, may be attacked upon the ground that it is unreasonable, and to support this claim evidence may be introduced.

APPEAL by the defendant, Steinway & Sons, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 29th day of January, 1917, granting plaintiff's motion for judgment on the pleadings, consisting of a complaint, an amended answer and a demurrer thereto.

*Walter B. Solinger,* for the appellant.

*Robert W. Bonynge,* for the respondent.

*Samuel P. Goldman* and *Walter F. Peacock,* for the Real Estate Board of New York, intervenor.

*Terence Farley* of counsel [*Leon N. Futter* with him on the brief] for the City of New York, amicus curiae.

SCOTT, J.:

The action is one by a vendor against a vendee for the specific performance of a contract for the sale and purchase of real estate. The pleadings consist of a complaint, and an amended answer containing a counterclaim, and a demurrer thereto. The plaintiff moved for judgment on these pleadings and her motion was granted. The defendant appeals.

The complaint sets forth that on July 13, 1916, plaintiff and defendant entered into a contract for the sale and purchase of a certain piece of real estate belonging to plaintiff, and that defendant thereupon paid the sum of $3,000 on account of said purchase; that on the 1st day of August, 1916, at the time and place specified in the contract, plaintiff

duly tendered performance on her part, and demanded that defendant should perform on its part, which it refused to do. The judgment demanded is that defendant be required to specifically perform the contract which is annexed to the complaint and by reference made a part thereof.

The contract is in the usual form and describes a piece of property on the southerly side of West Fifty-eighth street in the city of New York, between Sixth and Seventh avenues. The sale is to be made subject to certain restrictions and covenants embraced in a deed made in 1868, and which cut no figure in the present controversy. It is agreed that the property shall be conveyed to the purchaser by a deed containing the usual full covenants and warranties so as to convey to the purchaser the fee simple of the premises above described " free of all incumbrances except as herein stated." The contract contains the following unusual and significant clause: " It is further understood and agreed between the parties hereto that the purchaser has entered into contracts for the purchase of premises Nos. 109, 111, 113 West 57th Street and 114 West 58th Street, and that the performance of the covenants contained in this contract is dependent upon the simultaneous delivery both as to time and place of the respective deeds for the said premises Numbers 109, 111 and 113 West 57th Street and Number 114 West 58th Street. If upon the examination of the title to the parcel of land above described it shall be found unmarketable, or if upon the examination of title to premises Numbers 109, 111 and 113 West 57th Street and Number 114 West 58th Street, the title thereof or of some portion thereof shall be found unmarketable, then in either case the purchaser shall not be obligated to take title under this contract, but the money paid upon the execution of this contract shall be returned to the purchaser and this contract shall be cancelled, except that in case the defect in title making the title unmarketable, as aforesaid, shall be found to exist in respect of the parcel of land herein described, then the seller shall also pay to the purchaser the reasonable expenses of the purchaser in the examination of the title to said premises, but said expenses shall in no event exceed the net amount of the cost of examination of said title by a Title Insurance Company."

The significance of this clause, in so far as it bears upon the present controversy, is that it shows that both parties understood that defendant was attempting to buy a plot of land comprising three houses and lots on West Fifty-seventh street, and two houses and lots on West Fifty-eighth street, and that if it could not acquire the whole plot, it did not desire to acquire any portion of it. The answer admits, in effect, all of the allegations of the complaint except as to plaintiff's readiness and ability to perform on her part.

The answer further alleges, by way of defense and counterclaim, that plaintiff knew when the aforesaid contract was made and immediately prior thereto that defendant, as the purchaser of plaintiff's property and the other lots constituting the plot aforesaid, intended to immediately demolish all of the buildings on said plot and to erect upon the entire plot, both in width and depth, a business building ten stories in height fronting on Fifty-seventh street, and six stories in height fronting on Fifty-eighth street to be used as piano warerooms and lofts and in which defendant proposed to conduct its business and from which shipments of pianos were to be made; that defendant was not buying the property as a real estate investment, but solely for the purpose of erecting a warehouse thereon.

That in and by chapter 470 of the Laws of 1914, as amended by chapter 503 of the Laws of 1916* of the State of New York, there were added sections 242a and 242b to the Greater New York charter, providing therein that the board of estimate and apportionment be and it is authorized to divide the city of New York into districts and to regulate and restrict the location of trades and industries and the location of buildings designed for specific uses, having first appointed a commission to recommend the boundaries of districts and appropriate regulations to be enforced therein.

That on June 26, 1914, the board of estimate and apportionment duly appointed a commission on " Building Districts and Restrictions," consisting of sixteen members, to recommend the boundaries of districts and appropriate regulations to be enforced therein.

---

* *Sic.* See Laws of 1916, chap. 497.— [REP.

That the commission thus appointed entered upon an investigation of the subject referred to it, and in due time made a report thereon to the board of estimate and apportionment. The answer sets forth certain extracts from said report which it is unnecessary to repeat here, and then continues:

" *Tenth.* That on July 25th, 1916, and intermediate the making, execution and delivery of the contract and the date fixed therein for the delivery of the deed by the plaintiff, the Board of Estimate and Apportionment of the City of New York, pursuant to the power and authority delegated to it, duly passed a Building Zone Resolution to take effect immediately, therein dividing the City into three classes of districts: (1) residence districts; (2) business districts; (3) unrestricted districts, which are shown on a use district map made a part of the resolution, and by the resolution it is provided that in a residence district no building shall be erected other than a building with its usual accessories, arranged, intended, or designed exclusively for certain specific uses; that such specified uses exclude and thereby prohibit the erection or use of any building or premises within such district for business purposes. That hereto annexed is a copy of the Zone Resolution marked ' B ' which is hereby made a part of this answer.

" *Eleventh.* That by the resolution and by the use district map the block on 58th Street, between Sixth and Seventh Avenues, was designated as a residence district.

" *Twelfth.* That the plaintiff's property Number 112 West 58th Street and the property of Peachy J. Flagg, are included and embraced within said block and are located within the residence district aforesaid. That hereto annexed is a drawing marked ' C ' showing the residence district, which is hereby made a part of this answer.

" *Thirteenth.* On information and belief, that neither the plaintiff nor Peachy J. Flagg, or either of them, are now nor were they on August 1st, 1916, able or ready to convey the fee simple of either of the premises 112 West 58th Street and 114 West 58th Street to the defendant, free from all encumbrances or building restrictions not included in the exceptions specified in the contract of July 13, 1916. That the Statute Law and the action of The City of New York and the resolution adopted by its Board of Estimate and Apportionment on

July 25, 1916, has made it impossible for the plaintiff to perform her contract, and that the title to the said premises is unmarketable.

"*Fourteenth.* That the defendant on August 1, 1916, was and still is ready, upon the conditions specified in said contract, to perform the obligations imposed upon it by the terms of the contract."

The resolution of the board of estimate and apportionment attached to and by reference made a part of the answer shows that in a residence district, such as the block in which plaintiff's property was declared to be, no building might be erected, other than a building with its usual accessories, intended or designed exclusively for one or more of eight specified uses, two of which are clearly inapplicable to the plaintiff's property, and none of which include the use to which defendant intended to put the building it designed to build, or any other business use except boarding houses and hotels of a certain size.

The defendant, therefore, demands judgment that the complaint be dismissed and that it recover back its part payment, having a lien therefor on the premises.

The demurrer to the answer, which is for general insufficiency, of course admits all the relevant allegations therefor.

The case then, briefly stated, is as follows: Plaintiff agrees to convey a plot of land free from all incumbrances, except a covenant against nuisances. Defendant agrees to buy upon these terms, intending to erect upon the property a business building, and having no other use for the property.

At the time the contract of sale is made there is no restriction upon the use to which the property may be put, except the covenant against nuisances, whether imposed by contract, covenant in the chain of title or legal enactment.

Between the date of the contract and the day upon which the sale is to be consummated the board of estimate and apportionment of the city of New York, acting under authority conferred by the Legislature, adopts a resolution which, if valid, has the force and effect of law, whereby the uses to which the property may be put are very greatly restricted, and especially is the use to which defendant intended to put the property, and for which alone it agreed to buy it expressly prohibited.

Under these circumstances will a court of equity compel a vendee to specifically perform his agreement? There can be no doubt that such a restriction upon the uses to which the property may be put under the resolution of the board of estimate and apportionment, would if imposed by a covenant found in the chain of title and running with the land, constitute an incumbrance and absolve defendant from its contract to purchase it. (*Terry* v. *Westing,* 5 N. Y. Supp. 99; 52 Hun, 610.) This as we understand is conceded by the plaintiff, respondent, and it is unnecessary to elaborate the point further, or to cite other authorities to sustain it. But it is said that such a restriction upon the use to which the property may be put, if imposed by legislative or municipal authority, while it may operate as an incumbrance on the property and affect its marketability, is not such an incumbrance as may be availed of by a vendee to avoid his agreement to purchase it, and it is this view which seems to have been taken by the learned justice at Special Term. We are cited to no cases, and have been unable to find any, which make this distinction where, as in the present, the restriction or incumbrance was imposed upon the property between the time of making the contract and the time fixed for the passing of the title. Undoubtedly if a person contracts to purchase a building, such as a tenement house or a factory, which is restricted as to the manner of its use by laws and ordinances existing when the contract is made, he will be chargeable with a knowledge of these restrictions and will be deemed to have contracted to purchase the property subject to them. So if defendant had contracted to buy the property in question here *after* the so-called zoning resolution had been adopted by the board of estimate and apportionment, and had become a part of the public law, it may well be that it could not be heard to object to taking title because of the restrictions imposed upon the use of the property by such resolution. (*Bennett* v. *Buchan,* 76 N. Y. 386; *Neeson* v. *Bray,* 19 N. Y. Supp. 841.) But that is not the case we have here. The plaintiff agreed and intended to sell a piece of property freed from any restrictions upon its use, except as to nuisances. Defendant agreed to buy and understood that it was to buy

a piece of property so unrestricted, and would not have agreed to buy it if it had been restricted.   After the contract was made the law-making power steps in, and takes action which makes it impossible for the plaintiff to convey what she had, intended and expected to convey, and for defendant to acquire what it had intended and expected to acquire.   Under these circumstances it would seem to be most unfair for a court of equity to exercise its discretionary power to compel defendant to specifically perform.

In *Willard* v. *Tayloe* (75 U. S. [8 Wall.] 557, 566) it appeared that to enforce the contract as it was written would compel the vendor to accept the purchase price of certain property in the legal tender of the country which, at the time for performance, had greatly depreciated and was worth not more than half of the value of gold coin which was the legal tender when the contract was made.   The Supreme Court of the United States refused to award specific performance to the vendee unless he would pay the purchase price in gold coin. After citing many cases to show that specific performance was not and never had been a matter of strict right, but rests in the discretion of the court, the court went on to say:  " It is true the cases cited, in which the discretion of the  court is asserted, arose upon contracts in . which there existed some inequality or unfairness in the terms, by reason of which injustice would have followed a specific performance.   But the same discretion is exercised where the contract is fair in its terms, in its enforcement, from subsequent events, or even from collateral circumstances, would work hardship or injustice to either of the parties."

The same rule was adopted in this State in *Gotthelf* v. *Stranahan* (138 N. Y. 345).   In that case between the time the contract was made and the day on which title was to pass, the city of Brooklyn had levied substantial assessments upon the property in anticipation of certain street improvements to be made in the future, and which when made would greatly enhance the value of the property contracted to be sold. The terms of the contract were such that it appeared to be incumbent upon the vendor to pay these assessments before he could give a marketable title, although the injustice of compelling him to do so was manifest.   In an action by the

vendee to compel specific performance the Court of Appeals said: " Where by reason of circumstances which have intervened between the making of the contract and the bringing of the action, the enforcement of the equitable remedy would be inequitable and produce results not within the intent or understanding of the parties when the bargain was made, and there has been no inexcusable laches, or inattention by the party resisting performance, in not foreseeing and providing for contingencies which have subsequently arisen, the court may and will refuse to specifically enforce the contract, and will leave the party to his legal remedy." In each of these cases the contract was clear and explicit in its terms, and the circumstances which had arisen after it was made, and which as it was considered rendered it inequitable to compel its specific performance, had occurred without any act by either party to the contract, and was of a nature which neither party could reasonably have anticipated when the contract was made.

In principle the present case is very similar to these. Neither party to the contract could, when it was made, have reasonably anticipated that before the time came for closing the title the law-making power would step in and impose such restrictions upon the use of the property, as would render it useless to defendant for the only purpose for which it sought to acquire it.

Under these circumstances it would, in our opinion, be plainly inequitable to compel defendant to specifically perform the contract. But the plaintiff further argues that if a valid restriction upon the use of the property such as was imposed by the resolution of the board of estimate and apportionment would constitute such an incumbrance as would relieve the vendee from its obligation to take title, still this particular resolution does not impose any restriction because it is wholly invalid. Her argument is that by limiting the uses to which her property may be put, the effect of the resolution is to deprive her, to an extent, of her property, for it is particularly true of real estate that its value lies in the right to use it, and if that right be restricted the value is presumably *pro tanto* destroyed. This is claimed to be unconstitutional, both under the State and Federal Constitutions, because it deprives

her of her property without due process of law and without compensation. A few years ago this contention might have been plausibly supported by many cases, but since certain decisions in the Supreme Court of the United States, and in our own Court of Appeals there seems little prospect of redress for an owner whose property has been destroyed, or seriously reduced in value as an incident to the exercise by the State of its reserved police power. (*Reinman* v. *Little Rock,* 237 U. S. 171; *Hadacheck* v. *Los Angeles,* 239 id. 394; *Barrett* v. *State of New York,* 220 N. Y. 423.)

We do not propose to be drawn into a discussion of the very interesting constitutional question thus raised, or to express any opinion thereon. If the restriction be valid, as has already been said, it suffices to make a decree for specific performance inequitable, and even if there be a doubt as to its validity still the defendant should not be compelled to accept the title and take with it a law suit over the validity of the restriction.

It is a general rule that a purchaser will not be compelled to take property the possession of which he will be obliged to defend by litigation. (*Dyker Meadow L. & I. Co.* v. *Cook,* 159 N. Y. 7; *Heller* v. *Cohen,* 154 id. 306.) It is true that this rule is usually applied when the defense of the title will involve a matter of evidence which may not be available to the purchaser when called upon to defend his title, but its application is not exclusively confined to such cases. In *Daniell* v. *Shaw* (166 Mass. 582), which was an action for specific performance brought by a vendor against a vendee, the property was found to be incumbered by restrictions imposed by an act of the Legislature. The plaintiff insisted that the apparent incumbrance was no incumbrance at all because of the unconstitutionality of the act, but the court refused to decree specific performance, saying: " The defendant would be exposed to the chance of such litigation if compelled to accept the title now offered. * * * The plaintiff asks us to declare his title good by declaring the statute unconstitutional. The defendant ought not to be compelled to accept such a title." Nor is it at all certain that the validity of the restriction, so far as it concerns the particular lot covered by the contract between these parties, may not involve a question

of fact to be determined upon evidence. It is well settled that in the case of an act of the Legislature, or of a municipal ordinance which has been expressly ratified by the Legislature, evidence may not, as a general rule, be introduced for the purpose of showing that the statute or ordinance is unreasonable and, therefore, unconstitutional, while in the case of an ordinance or municipal regulation, adopted under authority of the Legislature, but not specifically ratified after adoption, it may be attacked on the ground that it is unreasonable, and to support this claim evidence may be introduced. (*Matter of Stubbe* v. *Adamson,* 220 N. Y. 459.)

The resolution of the board of estimate and apportionment setting aside the single block upon which plaintiff's property stands falls within the latter category of a municipal regulation adopted pursuant to discretionary authority vested in the board by the Legislature, but never so far as appears specifically ratified by the Legislature. It may, therefore, be attacked as unreasonable and on that issue it seems that evidence may be taken. Whether such an attack would be likely to succeed we need not now inquire. Certainly the defendant should not be compelled to assume the burden of making it. Furthermore, there may be some doubt whether defendant, if it took title to the property with the incumbrances on it, would be in a position to attack it.

For all these reasons we are of the opinion that plaintiff has failed to make out a case for the equitable remedy of specific performance.

The order appealed from is, therefore, reversed, with ten dollars costs and disbursements to the defendant, and the motion denied, with ten dollars costs.

CLARKE, P. J., LAUGHLIN, DAVIS and SHEARN, JJ., concurred.

Order reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs.