HERMANN M. BIGGS and FRANCES R. BIGGS, Appellants, *v.*
STEINWAY AND SONS, Respondent.

First Department, April 30, 1920.

**Vendor and purchaser — specific performance of contract to convey
land — effect of municipal ordinance enacted between date of
contract and time of performance — purchaser not obliged to
reimburse vendor who is unable to convey — evidence — specific
performance denied, as inequitable where conditions have changed,
although title good at time of trial — when time essence of
contract.**

A purchaser may refuse to accept title to property in New York city
under a contract of sale providing that in case the title to an adjoining
parcel which the purchaser was about to buy from a third person should
be unmarketable the purchaser would not be obligated to take title,
where it appears that subsequent to the signing of the contract and
before the date of taking title to either parcel the board of estimate and
apportionment adopted a building zone resolution which prevented the
purchaser from using the adjoining property for the construction of a
business building, for which purpose it was understood by the vendor
that the purchaser was buying both parcels, though the contract con-
tained no reference to the purpose for which the land was to be used.

Where a purchaser is justified in refusing to accept the title tendered he
is not obliged to reimburse the vendor for any loss he sustained by
preparations made by him to perform the contract which he was finally
unable to perform.

The purchaser, in suit for specific performance, may prove that at the time
of the trial it would be inequitable to compel him to accept title without
pleading such defense, where the vendor by a supplemental reply pleads
that building restrictions which rendered his title unmarketable have
been removed.

The general rule, that if the title is good at the time of the trial of suit for
specific performance compensation may be awarded to the purchaser
for any injury resulting to him from the delay and specific performance
may be decreed, does not apply where there has been a material change
in the condition of the parties or of the premises and it would be inequitable
to grant a decree.

On all the evidence *held* that the condition of the parties had so changed
between the time when the title should have been transferred and the
date of the trial that it would be inequitable to decree specific performance
of the contract by the purchaser.

While the contract of sale between the parties did not provide that time
was of the essence thereof and the vendor expressly objected to such
a provision still the provisions with respect to the delivery of possession
free from occupancy on the date when title was to be given show that

time was substantially of the essence of the contract and as the contract expressly provided for its cancellation in the event that a marketable title could not be delivered at the specified time, it would be inequitable to hold that the purchaser was bound to take title more than two years after the stipulated date and after the condition of the parties had materially changed.

There is no force in the contention that the provisions of the defendant's answer and amended answer by which it then manifested readiness and willingness to perform the contract, but only asked for a return of the down payment and not for specific performance, should be construed as a manifestation of willingness to perform and to accept performance at the time of the trial, for at the time the answer and amended answer were interposed conditions had not materially changed, but the defendant proved that since then conditions had so changed as to render it inequitable for the court to compel performance.

PAGE and SMITH, JJ., dissent, with opinion.

APPEAL by the plaintiffs, Hermann M. Biggs and another, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 5th day of May, 1919, upon the decision of the court rendered after a trial at the New York Special Term dismissing the complaint, with costs, and requiring the plaintiffs to pay to the defendant within thirty days the sum of $28,000, being the down payment made by the defendant to the plaintiffs on the execution of the contract for the specific performance of which this action was brought, together with interest thereon and decreeing a sale of the premises for the payment thereof in case payment was not made as therein required.

*Ira A. Place* of counsel [*Austen G. Fox* and *C. J. Beakes* with him on the brief], for the appellants.

*Walter B. Solinger* of counsel [*Fernando Solinger* with him on the brief; *Solinger & Solinger,* attorneys], for the respondent.

LAUGHLIN, J.:

Mr. Justice GAVEGAN, before whom the issues were tried, wrote a well-considered opinion, properly disposing of the principal points; but in view of the importance of the litigation and the novelty of the questions presented, we deem it necessary to add some further observations in support of the judgment.

The contract between the plaintiffs and the defendant was made on the 29th of June, 1916, and thereby the plaintiffs

agreed on the first day of August thereafter to convey to the defendant by deeds in the proper statutory short form containing the usual full covenants and warranties and free from all incumbrances, except as therein stated, the premises known as Nos. 109, 111, 113 West Fifty-seventh street, in the borough of Manhattan, New York, in fee simple. It was expressly understood and agreed that simultaneously with the execution of the contract the defendant was entering into a contract for the purchase of the premises known as 114 West Fifty-eighth street, and that the performance of the contract with the plaintiffs was dependent upon the simultaneous delivery of a deed to the defendant of said premises according to its contract with the owner thereof and that if the title to any part of the premises agreed to be conveyed by the plaintiffs or to the premises 114 West Fifty-eighth street, should be found to be unmarketable, then the purchaser should not be obligated to take title and the money paid on the execution of the contract should be returned to the defendant and the contract canceled, and in the event of a defect in the plaintiffs' title making it unmarketable they agreed to pay to the defendant the reasonable expenses of the examination of the title and they also agreed that the purchaser should have a lien on the premises for the repayment of the down payment. It was further provided that if, at the time for consummating the contract, the purchaser should not have obtained title to the premises 114 West Fifty-eighth street, a reasonable adjournment would be granted by the plaintiffs to enable him to obtain title to said premises. Provision was also made for a reasonable adjournment, if necessary, to enable the plaintiffs to remove tenants from any of the parcels and to satisfy mortgages thereon, it being expressly understood that possession was to be given free from occupancy at the time of the delivery of the deeds; and it was agreed that at the time of the delivery of the deeds the purchaser should execute to the plaintiffs a lease of the premises 113 West Fifty-seventh street, then occupied as a home by one of the plaintiffs, for a term not exceeding two weeks at a specific rental. At the time the contract was executed the plaintiffs were aware of the fact that the defendant was also negotiating for the purchase of the premises known as 112

West Fifty-eighth street, owned by one Anderson, and that the defendant intended at once to demolish the buildings on the five parcels and to erect thereon a single business building, ten stories in height on Fifty-seventh street and six stories in height on Fifty-eighth street and to use the building as its piano warerooms and lofts. Upon the execution of the contract the defendant immediately employed architects to make plans for the new building; and the plans were completed and filed with the superintendent of buildings on the 3d day of August, 1916. In the meantime, and on the 25th of July, 1916, the board of estimate and apportionment, .on the recommendation of a commission appointed by it on the 26th of June, 1914, adopted a building zone resolution which took effect immediately, dividing the city into three classes of districts, viz., (1) residence districts, (2) business districts, (3) unrestricted districts. By that resolution the premises known as 112 and 114 West Fifty-eighth street were embraced in a residence district and their use for business purposes, as contemplated by the defendant, was prohibited. On the submission of the plans filed by the defendant the superintendent of buildings, owing to the zoning resolution, refused to issue a building permit. When the parties met on August first, the time specified for consummating the contract, the plaintiffs tendered title but the defendant interposed the adoption of the building zone resolution as an objection and declined to take title on that ground. At the request of the respondent the closing was then postponed, by mutual consent, until the thirty-first of August. In the meantime the respondent endeavored, as already stated, to obtain authority to build on the premises as contemplated and made further efforts to the same end but to no avail; and on the thirty-first of August the respective parties maintained the same attitude as on August first and negotiations terminated. This action was commenced on the 13th of September, 1916, by service of the summons and complaint. On the 13th day of July, 1916, the defendant contracted for the purchase of the Anderson parcel and before the time for consummating that contract arrived the zoning resolution had been adopted and the defendant likewise refused to take title to that parcel,

whereupon Anderson brought an action for specific performance. The defendant answered setting forth the material facts; to which reference has been made, and the purposes for which the premises were to be purchased, and the adoption of the zoning resolution before the time for the consummation of the contract, and counterclaim for the down payment. The plaintiff demurred to the defense and counterclaim, and moved for judgment on the pleadings, and the motion was granted at Special Term, but on appeal this court reversed (*Anderson* v. *Steinway & Sons*, 178 App. Div. 507) and held that the defendant was not obliged to take the title, and that its obligation in that regard did not depend upon the validity of the zoning resolution, for it was not obliged to take the risk of the validity thereof, and our decision was affirmed by the Court of Appeals. (221 N. Y. 639.) That decision is applicable and controlling here and it necessarily follows that the defendant was not obliged to take the title tendered either on the 1st or the 31st of August, 1916. There is no basis, in my opinion, for attempting to distinguish the *Anderson* case on the theory that this court and the Court of Appeals failed to appreciate the fact that the contract, as in the case at bar, did not specify the purpose for which the purchaser intended to use the premises, and that this court, in reversing the Special Term, and the Court of Appeals, in affirming our order, erroneously supposed that the act of the Legislature conferring authority on the board of estimate and apportionment to adopt the building zoning resolution, was enacted *after* the contract was made. (See Laws of 1914, chap. 470, adding to Greater N. Y. Charter [Laws of 1901, chap. 466], §§ 242a, 242b, as amd. by Laws of 1916, chap. 497. Since amd. by Laws of 1917, chap. 601.) The contract, in that case, was made on the thirteenth of July and the zoning resolution was adopted on the twenty-fifth of the same month. Of course, this court and the Court of Appeals realized and understood that the Legislature was not in session at that time and did not confer the power to adopt the zoning resolution *after* the contract was made. The failure of this court and of the Court of Appeals to allude to the fact that the authority to adopt the zoning resolution had been conferred by the Legislature *before* the contract was made does not warrant the inference that such fact was overlooked,

particularly since it appeared by the record that the defense in the *Anderson* case, to which the demurrer was interposed, expressly pleaded the statute conferring authority upon the board of estimate and apportionment to adopt the zoning resolution and the date of the enactment thereof, and the point was made and fully argued that the authority to adopt the zoning resolution having been conferred *before* the contract was made the parties were chargeable with notice that it might be exercised. The point, therefore, could not have been overlooked by either court. Moreover, in the *Anderson* case the facts with respect to which the defendant intended to use the premises were pleaded precisely as they were pleaded and proved here, not that the use to which the premises were to be put by the purchaser was expressly stipulated in the contract but merely that both parties so understood. In such circumstances to refuse to accord full authority to the decision in the *Anderson* case as a controlling precedent here would, in my judgment, be a serious departure from our method of administering justice and render precedents of but little value. The present appeal, however, is after a trial, and other points not fully considered in the decision in the *Anderson* case are presented.

It is alleged in the complaint that the plaintiffs and the owner of the premises 114 West Fifty-eighth street had good and marketable titles and duly tendered deeds in accordance with their contracts on the 1st day of August, 1916, and demanded payment of the balance of the purchase price and renewed the tenders and demands on the adjourned day and that the plaintiffs had been put to great expense, in vacating possession of the premises, in satisfying mortgages thereon before their due date and in obtaining another place of residence, to enable them to perform the contract and cannot be restored to their former position and specific performance of the contract was demanded. The defendant interposed an answer on the 27th of September, 1916, putting in issue some of the material allegations of the complaint and alleging for a defense and counterclaim that it was desirous of purchasing the said five parcels for the purpose of demolishing the buildings on the premises and erecting on the entire plot a factory building as already stated, which facts were known to the plain-

tiffs, and alleging the other material facts with respect to the adoption of the zoning resolution forbidding the erection of the structure contemplated on two of the parcels, and that the then owner of the premises 114 West Fifty-eighth street, with whom defendant contracted for the purchase thereof, was unable to perform the contract on account of the zoning resolution, and that the defendant was ready on August first and was still ready when the answer was interposed to perform the contract on its part, and it prayed for judgment dismissing the complaint and for a sale of the property under its lien for the down payment and for the repayment thereof. On the 11th of November, 1916, the defendant served an amended answer in substance to the same general effect but alleging the facts more fully. The plaintiffs by a reply and an amended reply put in issue the material facts alleged in the defense and counterclaim and alleged that the zone resolution was void and if specific performance was not decreed they demanded judgment for their damages. The issues were not brought on for trial until the 24th of October, 1918.

The learned counsel for the appellants contends that even though the *Anderson* case precludes a judgment in favor of his clients for specific performance, the defendant should, in any event, be compelled to reimburse his clients for their loss sustained in preparing to perform the contract consisting of bonuses paid to tenants for moving, bonuses paid to mortgagees for accepting payment before the debts secured thereby were due and the liability incurred by one of the plaintiffs in renting a house to occupy on removing from one of the parcels. Although no facts analogous to these were presented for adjudication in the *Anderson* case, that decision necessarily precludes a recovery by the plaintiffs of any of these items. If, as held in the *Anderson* case, the title tendered was not marketable and the defendant was not obliged to accept it, I know of no legal or equitable rule or principle under which the defendant should be obliged to reimburse the plaintiffs for any loss they sustained by the preparations they made to perform the contract which they finally were unable to perform.

It appears, however, that on the 12th day of July, 1918, and before the trial, the zoning resolution was so amended as to exclude therefrom the parcels on Fifty-eighth street, so

that thereafter there was no prohibition against the erection on the five parcels of a building such as the defendant contemplated erecting thereon at the time the contract was made and intended to erect thereon immediately after taking title. The plaintiffs also proved the adoption of a prior resolution by the board of estimate and apportionment on the 23d of March, 1917, amending section 7, subdivision c, of the zoning resolution as follows: "(c) Permit the extension of an existing or proposed building into a more restricted district under such conditions as will safeguard the character of the more restricted district."

On the 13th day of September, 1918, the plaintiffs served a supplemental reply in which they pleaded the amendment of the zoning resolution adopted on the 23d of March, 1917, partly removing the restriction, and the amendment of July 12, 1918, wholly removing it. It was, however, neither pleaded nor proved that after the adoption of either of these resolutions amending the zoning resolution, the plaintiffs made a further tender of performance of their contract based thereon, and there is no evidence that either amendment was drawn to the attention of the defendant until the service of the supplemental reply. The first amendment of the zoning resolution adopted on the 23d of March, 1917, did not, I think, materially change the status of the parties, for it did not follow therefrom that the building the defendant contemplated erecting would have been permitted thereunder and conditions might have been exacted for safeguarding the character of the restricted district which would have materially affected the defendant's plans and purposes. The real point presented by the supplemental reply and the evidence received thereunder is as to whether, in view of the fact that the restriction had been wholly removed at the time of the trial, which occurred over two years after the time defendant was to receive title, the court should have awarded specific performance, or should have required that the defendant, as a condition of not having a decree of specific performance rendered against it, reimburse the plaintiffs for the losses they incurred in the particulars specified. The plaintiffs showed that acting pursuant to the contract, which required them to deliver the premises unoccupied, they expended prior to the 1st of August, 1916, the day on which the contract was to be consummated, $7,533.32

in securing the surrender of leases and in moving and storing the goods of one of the plaintiffs, and that one of the plaintiffs rented a house known as 39 West Fifty-sixth street for his residence for the term of five years at an annual rental of $7,000, and that they were obligated to pay the sum of $1,005.42 to obtain discharges of mortgages, in addition to the payment of the principal and interest, and that they became obligated to pay as brokers' commissions on the sale the sum of $2,800; and on account of these items the plaintiffs claimed a loss of $18,338.64. The plaintiffs also claim that the defendant agreed to pay them considerably more than the market value of their property at the time the contract was made. The contract price was $280,000. One expert called by the plaintiffs testified that the market value at that time was only $200,000 and another testified that it was $208,000 or $210,000. An expert called by the defendant testified that the market value when the contract was made was $325,033.22 and that its value at the time of the trial was less. On this evidence the plaintiffs claim that the favorable contract they entered into with the defendant was worth upwards of $80,000 more than the market value of the premises they agreed to convey. On the other hand, the defendant showed that it was not purchasing for investment or speculative purposes but solely for the purpose of erecting said building and conducting its business therein; that after making the contracts for the purchase of the parcels and before it was to take title it entered into a contract with the Farmers Loan and Trust Company for a loan of $350,000 to be secured by a mortgage on the five parcels and to run for five years with interest at five per cent during the course of the construction of the building, and thereafter with interest at four and one-half per cent, and that the loan was accepted subject to the approval of the Farmers Loan and Trust Company of the plans; that in the meantime and before the trial building enterprises were seriously restricted by lawful regulations incident to the war and the cost of building construction had greatly increased and that the average increase thereof was approximately sixty per cent above the cost at the time the defendant was to take title, and that it could no longer obtain the loan from the Farmers Loan and Trust Company, and that the additional cost of

obtaining such a loan at the time of the trial would have been approximately $20,000.

No claim was made on the trial that this evidence presented by the defendant in answer to the evidence offered by plaintiffs under the supplemental reply was not admissible because not pleaded. If, therefore, it should have been pleaded it is too late now to raise the point. A reply is the last pleading contemplated by the Code of Civil Procedure and any new matter therein is necessarily deemed denied and subject to any available defense on the part of the defendant. (See Code Civ. Proc. § 514 *et seq.;* Id. § 522.) Of course, if the plaintiffs, instead of serving a supplemental reply, had obtained leave and filed a supplemental complaint showing that pending the action the premises had been excepted from the zoning resolution, then it would have been necessary for the defendant, if it wished to claim that circumstances had so changed that it would be inequitable to require it to take title, to plead the material facts by an amended answer; but since the plaintiffs saw fit to present this issue with respect to their ability to perform, arising by virtue of the rescission of the zoning resolution in so far as it affected the premises in question, by a supplemental reply only, the facts proved by the defendant showing that it would have been inequitable to require it to take title at the time of the trial were clearly admissible. In fact the record shows that the plaintiffs stipulated that they interposed no objection to this evidence on the ground that it was not admissible under the pleadings.

I am of the opinion that this evidence neither required nor would it warrant a decree for specific performance. The defendant having been justified in rejecting title at the time title was tendered the question is whether the court could or should make it take title upwards of two years thereafter when the restriction had been removed. The learned counsel for the appellants rely on the general rule that if the title is good at the time of the trial compensation may be made to the purchaser for any injury resulting to him from the delay and specific performance may be decreed. (*Clute* v. *Robison,* 2 Johns. 595, 614; *Jenkins* v. *Fahey,* 73 N. Y. 355; *Haberman* v. *Baker,* 128 id. 253; *Haffey* v. *Lynch,* 143 id. 241.) But that general rule is subject to an exception recognized in *Haffey* v.

*Lynch* (*supra*) and in *Schmidt* v. *Reed* (132 N. Y. 108) and by Chief Justice MARSHALL in *Garnett* v. *Macon* (2 Brock. [U. S. C. C.] 185) that it does not apply where there has been a material change in the condition of the parties or of the premises and it would be inequitable to grant the decree. If the action had been brought to trial prior to the removal of the restriction the plaintiffs would not have been entitled to the decree and when the restriction had been removed the circumstances had materially changed, both with respect to the availability of money and the cost of material and construction in consequence of our having entered into the World War. This is not like a case of a defect in title which it is within the power of the owner to remove upon attention being drawn thereto and which may be removed in a comparatively short time. (See *Higgins* v. *Eagleton*, 155 N. Y. 466.) Here it was not within the power of the owners to remove the obstacle. They had no cause of action for specific performance when the action was begun, and I think they acquired none by the amendment of the zoning resolution nearly two years thereafter. The pivotal point, as it seems to me, is, would the defendant have made the contract at the time the restriction was removed or at the time of the trial? If conditions had remained the same the court might, perhaps, properly say that there is no good reason why it should not have made it at the time the title became marketable as well as before, but the changed conditions so materially affected the defendant's plans and purpose that it cannot, or at least should not, be held that it should have been compelled to take title at the time of the trial. The contract did not expressly declare that time was of its essence and the plaintiffs objected to having it so provided therein but they agreed to convey a marketable title on August 1, 1916, and that if they should be unable so to do the contract should be canceled and that they would, in that event, repay to the defendant the down payment made by it. It might be within the province of the court to enforce specific performance of the contract if the restriction had been removed within a reasonable time after August first, and before conditions had materially changed to the prejudice of the purchaser; but here the provisions of the contract with respect to delivery of possession free from occupancy show that time was

*substantially* of the essence of the contract and I think it would be most inequitable to hold the defendant indefinitely bound by the contract, which expressly provided for its cancellation in the event that a marketable title was not tendered at a specified time more than two years before the trial. (See *Wells* v. *Smith,* 7 Paige, 22; *West* v. *Guaranty Trust Co.,* 162 App. Div. 301; *Toole* v. *Toole,* 112 N. Y. 333; *Lloyd* v. *Collett,* 4 Brown Ch. 469; *Gale* v. *Archer,* 42 Barb. 320; *Rice* v. *Barrett,* 99 N. Y. 404; *Goldsmith* v. *Guild,* 10 Allen [Mass.], 239; *Schmitt* v. *Reed,* 132 N. Y. 108; *Jackson* v. *Edwards,* 22 Wend. 498; *Willard* v. *Tayloe,* 8 Wall. 557.)

There is no force in the contention that the provisions of the defendant's answer and amended answer by which it then manifested readiness and willingness to perform the contract, but only asked for the return of the down payment and not for specific performance, should be construed as a manifestation of willingness to perform and to accept performance at the time of the trial. When it interposed its answer and amended answer we had not entered the war and the conditions existing at the time the contract was made had not materially changed, but it proved that they had so changed long before the trial. The fact that the purpose for which the defendant desired the parcels was not recited in the contract is no answer to these views, for it sufficiently appeared by the contract that the purchaser had a particular plan and purpose in mind for which it desired more land than the plaintiffs had to sell and did not desire the plaintiffs' land unless it could obtain the other land, and, moreover, the plaintiffs were fully aware of the purpose for which the defendant was acquiring the property. Consequently a change in circumstances affecting such purpose was even more material to the purchaser than a material depreciation in the market value of the premises in the meantime which was recognized in *Garnett* v. *Macon (supra),* as a sufficient answer to a demand for specific performance.

The case is one of great hardship to both parties, but I fail to see any principle upon which the defendant should be compelled to make good the plaintiffs' loss.

It follows that the judgment should be affirmed, with costs.

CLARKE, P. J., and MERRELL, J., concur; PAGE and SMITH, JJ., dissent.

Page, J. (dissenting):

Mr. Justice Laughlin states that the decision in the case of *Anderson* v. *Steinway & Sons* (178 App. Div. 507; affd., 221 N. Y. 639) is controlling in the present case and that " it necessarily follows that the defendant was not obliged to take the title tendered either on the 1st or the 31st of August." I do not concur in this conclusion. The *Anderson* case came before this court on an appeal from an order granting plaintiff's motion for judgment on the pleadings, consisting of the complaint, answer containing a defense and counterclaim, and demurrers to the latter for insufficiency. The present case is an appeal from a final judgment after the trial of the issues raised by the complaint, answer containing substantially the same defense and counterclaim, the allegations of which were controverted by replies. In the *Anderson* case the facts alleged in the defense and counterclaim were admitted. Here they are controverted, and the evidence tending to support or disprove the facts is before us. The authority of the *Anderson* case was closely limited by the Court of Appeals to one proposition, for the opinion of that court states: " It appears from the contract in controversy and the pleadings that it was understood by the contracting parties to be wholly dependent upon the defendant obtaining title to plaintiff's and other real property, mentioned in the contract, the title to all of which was to be taken solely for a purpose which has either been prevented by the ordinance in question or can only be carried out after successfully maintaining in the courts that such ordinance is unconstitutional, and it would be inequitable in this case to decree specific performance. The opinion of Justice Scott of the Appellate Division, so far as it discusses the question upon which we place our decision, is approved."

From the admitted facts in that case it appeared that it was understood that the property was taken solely for use for business purposes which had been prevented by the building zone restriction, if valid, or, if not valid, it would require action in the courts to relieve the property from the inhibition and that the defendant should not be compelled to take property that he could not use for the sole purpose for which it was purchased or to buy a lawsuit. Mr. Justice Scott in his opinion stated: " Neither party to the contract could, when

it was made, have reasonably anticipated that before the time came for closing the title the law-making power would step in and impose such restrictions upon the use of the property as would render it useless to defendant for the only purpose for which it sought to acquire it." (p. 515.) And again: " After the contract was made the law-making power steps in, and takes action which makes it impossible for the plaintiff to convey what she had intended and expected to convey, and for defendant to acquire what it had intended and expected to acquire." (p. 514.)

If the facts upon which the decision in the *Anderson* case was predicated were not established by the proof in the present case, then the two cases are clearly distinguishable and the *Anderson* case would have no controlling effect on the decision in this case.

*First.* Was it an essential element of the contract that it and the other property could be devoted to a business use? There is no claim made that the contract does not contain the entire engagements of the parties, or that anything was omitted therefrom by mutual mistake or by fraud. It is the usual contract for the sale of real estate. The only unusual feature is the reference to a contract simultaneously made with another party for the purchase of her real estate and making the performance of this contract dependent, not alone on the marketability of the property therein described, but also on the marketability of the other property. The contract is expressed in clear and unambiguous terms. There is, therefore, no room for construction or resort to prior negotiations to ascertain the intention of the parties. It is well settled that it is not in the province of the court to change the terms of a contract which has been entered into, even though it be a harsh and unreasonable one. Nor will the dictates of equity be followed if by so doing the terms of the contract are ignored, for the folly or unwisdom of a contract is not for the court to pass upon. Its terms, however onerous they may be, must be enforced according to the clear meaning of the language used, and the intention of the parties using the language must be determined by its contents alone. The contract in suit was prepared with care and deliberation; several proposed contracts were prepared and rejected. This contract was adopted by the parties as expressive of their deliberate intention. The court cannot make a new contract

for the parties nor read into this one terms and conditions that the parties have not expressed. If, as claimed by the defendant, the sole object of buying this property was to erect upon it a business building, and if, unless it could be used for that purpose, it was not to be required to take title, a provision to that effect should have been incorporated in the contract. In the absence of such a provision, I can find no justification in law or equity for refusing specific performance on the ground that such was the unexpressed understanding of one party.

In this case there was no change in the law between the time of the signing of the contract and the closing of title, nor was there any restriction put upon the use of the property that could not have been reasonably apprehended. The Legislature in 1914 conferred the power on the board of estimate and apportionment of the city of New York to divide the city into districts and regulate and restrict the location of buildings designed for specific uses within such districts. (Laws of 1914, chap. 470, adding §§ 242-a and 242-b to the Greater New York Charter.) In 1916 this act was amended. (Laws of 1916, chap. 497.)* The amendment to section 242-b, which is applicable herein, merely delegated the further power to the board, from time to time, to amend, supplement or change the regulations or districts. The statute provided for the appointment of a commission to recommend the boundaries of districts and appropriate regulations and restrictions to be imposed therein; that the commission shall make a tentative report and hold public hearings thereon before submitting its final report to the board; that the board shall not determine the boundaries of any district nor impose any regulations or restrictions until after the final report of the commission; that after such final report the board shall afford persons interested an opportunity to be heard, at a time and place to be specified in a notice of hearing to be published for ten consecutive days in the *City Record.* The board of estimate and apportionment appointed the commission on June 26, 1914, and the commission made reports to the board on March 10, 1916, and June 2, 1916. Therefore, although the building zone resolution was not finally adopted until after the signing of the contract for

---

* Since amd. by Laws of 1917, chap. 601.— [REP.

the sale of the property in suit, there was no change in the law, nor sudden or unexpected action by the public authorities restricting the use of the Fifty-eighth street property. It is to be presumed that the board and the commission proceeded regularly and in exact compliance with the statute. Then there must have been public hearings before the commission between March 10, and June 2, 1916, and public hearings before the board of estimate and apportionment between June 2 and July 25, 1916, when the building zone resolution was adopted. The act authorizing the zoning of the city was passed more than two years before the contract was signed. That the act was to be put in effect was open and notorious. The final report of the commission had been delivered to the board of estimate and apportionment twenty-seven days prior to the signing of this contract. The slightest investigation would have shown that the action of the board was imminent, and also would have disclosed the fact that the Fifty-eighth street property was within the district restricted to residence purposes. If this restricted use interfered with the purposes for which the defendant desired the property, the failure to provide against it in the contract must be chargeable to its own inattention and neglect.

Nor can it be claimed that the building zone resolution was an incumbrance on the property so that it would render the title unmarketable. The law authorizing the division of the city into building zones was an exercise of the police power of the State, and all property is subject to such restrictions as the State in its sovereign power may deem necessary for the health, safety or morality of the people. Under this power, laws have frequently been passed regulating the materials which shall be used in buildings, prescribing the height of buildings, and prohibiting the erection of buildings for certain purposes within specified districts. Lands are held and contracts with respect thereto are made with the knowledge of and subject to this power in the State to regulate the use of the property. This regulation means that the owner is required to exercise his right in conformity with the demands of the public welfare, while at the same time he is left in the substantial enjoyment of his property with its essential incidents. That a valid regulation under the police power does not create

an incumbrance, or render the title unmarketable, follows as a necessary conclusion; for if it did, it would be a taking of the property without compensation and would for that reason be void. (*Forster* v. *Scott*, 136 N. Y. 577.) In the case of *Anderson* v. *Steinway & Sons* (*supra*), Mr. Justice SCOTT stated: " So if defendant had contracted to buy the property in question here *after* the so-called zoning resolution had been adopted by the board of estimate and apportionment, and had become a part of the public law, it may well be' that it could not be heard to object to taking title because of the restrictions imposed upon the use of the property by such resolution." We have above pointed out the distinction between the present case and the *Anderson* case in this regard, that the proof in this case showed that the right to regulate had been conferred on the municipal authorities long prior to the making of this contract, and that this specific regulation was so notorious and imminent that the parties were chargeable with notice of it and must be held to have contracted with this regulation in mind. Hence they are in the same position as though the contract had been made after the zoning resolution was passed. The only case which, to my knowledge, holds a valid regulation, created under the police power, an incumbrance on property which would excuse performance of a contract made after the enactment of the regulation, is *Lincoln Trust Co.* v. *Williams Building Corporation* (183 App. Div. 225), recently decided by a three to two vote of my associates, and which, for the reason above state, I cannot accept as controlling.

In my opinion, on the 1st day of August, 1916, the plaintiff and Mrs. Flagg tendered deeds which conveyed the property to the defendant in exact conformity with the terms of the written contract. The refusal of the defendant to accept the tender and perform on its part was unjustified.

At the time of the trial the excuse that the defendant had given for refusing to perform had been removed. On March 23, 1917, the board of estimate and apportionment modified the building zone resolution by changing Fifty-eighth street between Sixth and Seventh avenues from a residential to a business district. The plaintiffs thereupon served a supplemental reply setting up this fact. The defendant did not serve a supplemental answer alleging changes of condition

which might relieve it from being at this time compelled to perform. As the case stood at the opening of the trial, therefore, the condition was as follows: The plaintiffs were demanding specific performance of the contract. The defendant had set up the restriction on the use of the Fifty-eighth street property by the building zone resolution, claiming that by reason thereof the plaintiffs could not perform the contract, but that the defendant was at the time of closing title and still is ready and willing to perform. The objection to the title had been abrogated. It was stipulated on the trial that the plaintiffs and Mrs. Flagg have at all times been ready and willing to deliver to the defendant the deeds of the respective properties in the form provided in their respective contracts, duly executed and acknowledged by them respectively and with proper revenue stamps attached to the deeds, upon the payment of the balance of the purchase price. Therefore, it was not necessary to make a further tender of performance. If the zoning resolution was to be deemed an incumbrance, it had been removed at the time of the trial. It is well settled that a purchaser will be required to perform specifically if the title is good at the time of the trial, even though defective at the time fixed for the performance of the contract. (*Baldwin* v. *Salter,* 8 Paige, 473, 474; *Dutch Church in Garden Street* v. *Mott,* 7 id. 77, 85; *Brown* v. *Haff,* 5 id. 235, 241; *Jenkins* v. *Fahey,* 73 N. Y. 355, 359; *Schmidt* v. *Reed,* 132 id. 108, 115; *Haffey* v. *Lynch,* 143 id. 241; *Pakas* v. *Clarke,* 136 App. Div. 492, 493; affd., 203 N. Y. 534.) In such cases performance is decreed as of the date of the judgment, or as of the time when the defect was cured, and not of the original date of closing the title under the contract. The prevailing opinion acknowledges the rule, but says it should not be given effect because of changed conditions; not that the defendant has purchased other property, but because it would now, owing to the advance in the cost of materials, find it more expensive to build, and if it desired to borrow money for building it would find it difficult. No such defense was pleaded, but the court felt it would be inequitable under such circumstances to enforce the contract, and has denied the plaintiffs relief and adjudged a lien upon the premises for the amount of the down payment and directed a foreclosure and sale. Why a

court of equity should feel moved to these extremes in behalf of this defendant is beyond my comprehension. The plaintiffs have ever been ready, willing and able to carry out the contract according to its exact terms. In order to be able to do so, it was necessary that the premises be vacated by its occupants. The plaintiffs expended the sum of $7,533.32 in securing the surrender of unexpired leases of premises 109 and 111 West Fifty-seventh street and in moving and storing goods of plaintiffs from 113 West Fifty-seventh street. To secure another residence for their occupancy, they entered into a lease of another residence for a term of five years at an annual rental of $7,000. At the time of the signing of the contract there were certain mortgages upon the plaintiffs' premises, which were not due until dates subsequent to that fixed for closing of title, which defendant required to be satisfied prior to the delivery of the deed. In order to be in position to carry out the terms of the contract, the plaintiffs were required to and did pay additional interest and expenses amounting to $1,005.42. The plaintiffs also became and are obligated to pay the usual broker's commission upon the sale in the sum of $2,800. This loss they must bear, and in addition return the down payment with interest. Because, *first*, the purchaser intended to use the property for a purpose not disclosed by the contract, which use was about to be prohibited under authority of existing law; and if the ability to make such use of the property had been made a condition precedent to the taking of title, the sellers might and, as the fact of the impending imposition of the restriction was notorious, in all probability would have declined to sign the contract. *Second*, because the conditions as to material and money market have changed;— a defense of doubtful potency if pleaded, but which was not even pleaded. In my opinion, such a result is contrary to the equities of the case.

The judgment should be reversed, with costs, and a specific performance of the contract decreed as of August 1, 1916, with costs.

SMITH, J., concurs in result.

Judgment affirmed, with costs.