The errors herein discussed were material and prejudicial and require a reversal of the judgment.

The judgment of conviction should be reversed and a new trial granted.

HISCOCK, Ch. J., CARDOZO, POUND, McLAUGHLIN and CRANE, JJ., concur; ANDREWS, J., absent.

Judgment accordingly.

---

## URBIS REALTY COMPANY, INC., Respondent, *v.* GLOBE REALTY COMPANY, Appellant.

**Vendor and purchaser — contract for sale of real property — rights and obligations to be determined from language employed where unambiguous — title to be taken subject to " existing leases "— change in law by reason of which purchaser might not be able to evict tenants on expiration of leases does not warrant his refusal to take title.**

1. The rights and obligations of the parties under a contract entered into between them must be determined from the language employed therein, which if unambiguous, and found to clearly express the covenants assumed by the parties, will control in an interpretation of the agreement between the parties.

2. Where a contract in clear and concise words provides that title to certain real property is to become vested in plaintiff on April 1, 1920; that defendant agrees to sell and convey to plaintiff the property described and that plaintiff agrees to purchase the same subject to certain enumerated conditions and " subject also to existing leases, all of which expire or contain provisions for cancellations on or before October first, 1920, except one lease of the ground floor apartment," the conclusion is inevitable, on interpretation of the contract from the language used by the parties, that plaintiff covenanted to purchase the property and take title to the premises on April 1, 1920, subservient to the enumerated clauses of the contract. Its covenant to take title subject to existing leases was equally as binding as its covenant to take title subject to any other burden to which the title was to be subject. A contention, therefore, that the parties contracted in contemplation of the law as it existed at the time the contract was made and that because a radical change in the law took place before the date fixed for closing, which so restricted the owner's use of real property that the purchaser might not be able to obtain free possession October first, the latter should not be compelled to take title, cannot be sustained. (*Anderson* v. *Steinway & Sons*, 178 App. Div. 507; affd., 221 N. Y. 639, distinguished and explained.)

3. The only effect of chapter 137 of the Laws of 1920, entitled "An act in relation to summary proceedings to recover the possession of real property in cities of the first class, or in cities in counties adjoining a city of the first class during the existing emergency," is to temporarily deprive the landlord of the summary remedy given by statute except in certain cases, but it does not impair the obligation of the contract. (*People ex rel. Durham Realty Corp.* v. *La Fetra*, 230 N. Y. 429, followed.)

*Urbis Realty Co.* v. *Globe Realty Co.*, 201 App. Div. 533, reversed.

(Argued January 26, 1923; decided March 6, 1923.)

APPEAL from a judgment, entered July 3, 1922, upon an order of the Appellate Division of the Supreme Court in the first judicial department, reversing a judgment in favor of defendant entered upon a dismissal of the complaint by the court on trial at Special Term and directing judgment in favor of plaintiff.

*Harold Swain, Benjamin G. Bain* and *Dudley Harde* for appellant. The enactment of chapter 137 of the Laws of 1920 between the signing of the contract and the

time of closing title, did not justify the plaintiff in reject-
ing title. (*People ex rel. Durham Realty Co.* v. *La Fetra,*
230 N. Y. 429; *Froelich* v. *K. W. W. H. Co.,* 201 App. Div.
855; *U. M. R. & Imp. Co.* v. *Roth,* 193 N. Y. 570; *Baker*
v. *Johnson,* 42 N. Y. 126; *P. P. & C. I. R. R. Co.* v.
*C. I. & B. R. R. Co.,* 144 N. Y. 152.)

*Yorke Allen* for respondent. The additional findings
of fact and conclusions of law made by the order of the
Appellate Division were right. (*Anderson* v. *Steinway,*
178 N. Y. 507; 221 N. Y. 639; *Doherty* v. *Monroe Eckstein
Brewing Co.,* 198 App. Div. 708; *Kaiser* v. *Zeigler,* 115
Misc. Rep. 281.)

HOGAN, J. January 29th, 1920, the parties to this
action entered into a contract in writing wherein defendant
agreed to sell and plaintiff contracted to purchase specific
real estate, in the city of New York, upon which was
located an apartment house. The contract provided the
consideration to be paid and received; for the payment
of five thousand dollars on signing the contract and
payment of an additional sum together with a bond
and mortgage to be given for the balance on the closing
day which was fixed at 12 o'clock noon, April 1st, 1920.
Upon the execution of the contract plaintiff paid to
defendant the sum of five thousand dollars provided for
by the terms of the contract. On April 1st, 1920, the
day fixed for the closing of the title, defendant tendered
performance on its part. Plaintiff rejected the title for
specified reasons, which were held trivial by the court
below and need not be here considered with the exception
of one objection made by plaintiff which was sustained
by the Appellate Division, namely, that the contract
between the parties was entered into by the parties in
reliance upon the laws of this State as they existed on
January 29th, 1920; that the enactment by the legislature
of chapter 370, Laws of 1920, which took effect April 1st,
1920, changed the laws of the state of New York as

they existed prior to its taking effect so as to deprive the owners of real property in the state of New York of the remedies theretofore existing with reference to such property and so as to make it impossible for the plaintiff to obtain possession on October 1, 1920, of said premises.

Plaintiff having refused to perform the contract brought this action to recover the amount of the deposit of five thousand dollars paid under the terms of the contract. At Special Term plaintiff's complaint was dismissed upon the merits. The Appellate Division reversed the judgment of the Special Term, made additional findings and directed judgment for plaintiff, providing therein that plaintiff should have a lien upon the premises for the sum of five thousand dollars and interest thereon and for a sale of the premises to satisfy such lien.

The trial justice found as matter of fact that five leases of apartments in the building on the premises to which the plaintiff objected each contained a clause as follows:

" It is further understood and agreed that the landlord shall have the privilege of cancelling this lease from and after September 30th, 1920, providing the landlord notifies the tenant on or before the fifteenth day of July, 1920, of his intention so to do. The said parties for themselves, their heirs, executors, administrators and assigns, do hereby agree to the full performance of the covenants herein contained." That finding was undisturbed.

The trial justice further found as a fact that the objections to the title were trivial and could have been obviated by the defendant if its request for a short adjournment of its time for closing the title requested by it had been granted. Time was not of the essence of the contract.

The finding was disapproved by the Appellate Division and a new finding made in lieu thereof as follows:

" The objections to the title raised by the plaintiff

were trivial, except that based on the passage, subsequent to the making of the contract, of chapter 137 of the Laws of 1920. Such objections, except those based on chapter 137 of the Laws of 1920, could have been obviated by the defendant if its request for a short adjournment of the time for closing the title had been granted. Time was not of the essence of the contract."

The following additional findings of facts were made by the Appellate Division:

" *Thirteenth.* The building which was the subject of the contract was an apartment house. There were at the time of making the contract a number of existing leases of apartments therein which were outstanding on April 1st, 1920. The contract for the conveyance of the building contained a provision that the premises should be taken ' subject also to existing leases all of which expire or contain provisions for cancellation on or before October 1st, 1920, except one lease of the ground floor apartment.'

" *Fourteenth.* The contract was made on the 29th day of January, 1920. Thereafter, but prior to the first day of April, 1920, the legislature of the state of New York passed a certain act known as Chapter 137 of the Laws of 1920, which act was on the first day of April, 1920, duly approved by the Governor of the State of New York and took effect on the first day of April, 1920."

The conclusion of law found by the trial justice that defendant was entitled to judgment dismissing the complaint upon the merits was reversed and in lieu thereof the following conclusions of law were made by the Appellate Division:

" *First.* Said act changed the laws of the State of New York, as they existed prior to its taking effect and at the time of the making of the contract, so as to deprive the owners of real property in the State of New York of remedies theretofore existing with reference thereto, and so as to make it impossible for the plaintiff to obtain

possession of the apartments in the said building on the first day of October, 1920, as provided in said contract.

" *Second*. Plaintiff is entitled to judgment as prayed for in the complaint."

As we interpret the opinion of the Appellate Division, the reversal of the judgment of the trial court and direction of judgment for plaintiff was placed upon two grounds: (1) That " the case of *Anderson* v. *Steinway & Sons* (178 App. Div. 507; affd., 221 N. Y. 639) is an authority for the proposition that the parties should be deemed to have contracted within the contemplation of the law as it existed at the time the contract was made, and that where a radical change in the law had taken place by legislative enactment, before the date fixed for closing, which would have the effect of seriously restricting the purchaser's use of the premises which are the subject of the sale, contrary to the understanding of the parties when they entered into the contract the purchaser will not be compelled to take title," and (2) that in the instant case there was an express provision in the contract which formed an integral part thereof (referring to the clause " subject also to existing leases all of which· expire or contain provisions for cancellation on or before October first, 1920, except one lease of the ground floor apartment," as stated in the thirteenth finding of fact made by the Appellate Division), and that all of the existing leases, saving the one for a ground floor apartment, would or could be made to expire October first, 1920, thus evidencing the facts that the parties were aware that the defendant agreed to purchase the premises upon the understanding that he could have possession of all the premises excepting the apartment on the ground floor by October first and by reason of the Rent Laws which went into effect in April it was practically impossible for the landlord to select his own tenants after the expiration of their leases or to freely contract with desirable tenants in possession as to the rentals to be paid, thereby

placing a serious restriction upon the purchase use of the property.

We shall first consider the second ground quoted from the opinion of the Appellate Division.

The rights and obligations of the parties under the contract entered into between them must be determined from the language employed therein, which if unambiguous, and found to clearly express the covenants assumed by the parties will control in an interpretation of the agreement between the parties.

The contract in the instant case is free from ambiguity and complete in detail as to the covenants of the respective parties. An examination of the instrument discloses that in clear and concise words it provides that title to the property was to become vested in plaintiff, not on October 1st, 1920, but on April 1st, 1920, at the noon hour. In unequivocal language it provides, defendant agreed to sell and convey to plaintiff the real property and improvements thereon described by location, measurements of boundary and street lines. Plaintiff agreed to purchase the property so described " *subject* to state of facts an accurate survey would show; *subject* to any encroachments on the streets; *subject* to a notice of violation to cut an opening and install a skylight over the rear staircase providing the cut does not exceed fifty dollars; *subject* also to existing leases, all of which expire or contain provisions for cancellations on or before October first, 1920, except one lease of the ground floor apartment," and later in the contract " Said premises are sold subject to building restrictions and regulations in resolution or ordinance by the Board of Estimate and Apportionment of the City of New York, dated July 25, 1916, and amendments and additions thereto now in force." (Zoning Law.)

Reading the material part of the contract and particularly the provision of the same relating to the existing leases in connection with the context of the clause containing such provision, we fail to find justifi-

cation for the construction placed upon the same by the
Appellate Division, viz., that such provision evidences
the fact that the parties (*i. e.*, both parties) were aware
that plaintiff agreed to purchase the premises with the
understanding that it could have possession of all the
premises excepting the apartment on the ground floor
by October first. If such was the understanding of
plaintiff, why did it not insist that the contract should
in unmistakable terms so provide?. Why did it execute
a contract and covenant to purchase the property *subject*
to existing leases, the terms of. which were truthfully and
specifically stated therein? The circumstances surround-
ing the case would rather tend to show that such under-
standing by plaintiff was not conceived until the passage
of the statute in April. Interpreting the contract from
the language of the same employed by the parties, we
reach a conclusion that plaintiff covenanted to purchase
the property and take title to the premises on April 1st,
1920, subservient to the enumerated clauses of the con-
tract. Its covenant to purchase and take title subject to
existing leases was equally as binding as its covenant to
take title subject to any encroachment of the premises
on the street, as well as every other clause of the contract
to which its title was to be *subject.* Had plaintiff com-
pleted its contract on April first, it would have been the
owner of the property and in possession of the apartments
subject to the rights of tenants under existing leases as
the contract between the parties provided.

We are not in accord with the construction placed by
the decision of the Appellate Division upon the case of
*Anderson* v. *Steinway & Sons* (178 App. Div. 507; affd.,
221 N. Y. 639), in substance that the same is authority
that the parties contracted in contemplation of the law as
it existed at the time the contract was made, and a radi-
cal change in the law having taken place before the date
fixed for closing restricted the purchaser's use of the prop-
erty and the latter would not be compelled to take title.

Some confusion seems to prevail with reference to the *Anderson* case, and at the expense of lengthening this opinion and to clarify the decision we shall refer to the same.

In the *Anderson* case the court had under consideration an action wherein the plaintiff sought equitable relief for specific performance (a discretionary remedy) of a contract for the sale and purchase of real estate in the city of New York. The contract in that case recited that " it is understood and agreed between the parties " that the purchasers had entered into contracts for the purchase of pieces of property adjoining the property contracted to be purchased, and that the performance of the covenants in the contract were dependent upon the simultaneous delivery both as to time and place of the respective deeds of the respective pieces of land. If the title of any of the lands should be found unmarketable the purchaser should not be obligated to take title under the contract and the same should be canceled. As stated by the Appellate Division in that case (178 App. Div. 507, 510): " The significance of this clause, in so far as it bears upon the present controversy, is that it shows that both parties understood that defendant was attempting to buy a plot of land comprising three houses and lots on West Fifty-seventh street and two houses and lots on West Fifty-eighth street, and that if it could not acquire the whole plot, it did not desire to acquire any portion of it. The answer admits, in effect, all of the allegations of the complaint except as to plaintiff's readiness and ability to perform on her part." The answer further alleged that plaintiff knew at the time the contract was made and prior thereto that defendant intended to demolish all the buildings on the plot of land and erect a large building thereon for business purposes; that intermediate the execution of the contract and the date fixed for delivery of the deed, a building zone resolution was adopted and the plaintiff's property and adjoining prop-

erty on West Fifty-eighth street were placed in a residence district thereby rendering it impossible for plaintiff to perform her contract. Additional defenses were set up in the answer to which reference may be omitted. A demurrer was served by plaintiff to the answer and the Special Term granted a motion made by plaintiff for judgment on the pleadings and decreed that defendant specifically perform the contract. The Appellate Division reversed and denied the motion holding that equity would not decree specific performance on the part of defendant. The contract in that case was executed July 13th, 1916, only a few days prior to the adoption of the zone resolution. The closing day was designated as August 1st, 1916. Had the court in that case held that the parties contracted within the contemplation of the law as it existed at the time the contract was made it might have sustained specific performance. On the contrary, it placed its decision upon the unequivocal language of the contract between the parties and after calling attention to the restrictions on property by reason of the zone resolution said: " there can be no doubt such a restriction upon the uses to which property may be put, * * * would if imposed by a covenant found in a chain of title and running with the land constitute an incumbrance and absolve defendant from its contract to purchase it. * * * But that is not the case we have here. The plaintiff agreed and intended to sell a piece of property freed from any restrictions upon its use, except as to nuisances. Defendant agreed to buy and understood it was to buy a piece of property so unrestricted, and would not have agreed to buy it if it had been restricted. After the contract was made the law-making power steps in and takes action which makes it impossible for the plaintiff to convey what she had intended and expected to convey, and for defendant to acquire what it had intended and expected to acquire. Under these circumstances it would seem to be most unfair for a court of equity to exercise its discre-

tionary power to compel defendant to specifically perform."
(pp. 513, 514.)   When the *Anderson* case was decided by
this court we affirmed the decision of the Appellate Divi-
sion which denied specific performance (221 N. Y. 639),
but took occasion to limit our decision as will appear from
the memorandum opinion of the court, stating that as " it
appears from the contract in controversy and the plead-
ings that it was understood by the contracting parties to
be wholly dependent upon the defendant obtaining title to
plaintiff's and other real property, mentioned in the con-
tract, the title to all of which was to be taken solely for a.
purpose which has either been prevented by the ordinance
in question or can only be carried out after successfully
maintaining in the courts that such ordinance is uncon-
stitutional, and it would be inequitable in this case to
decree specific performance.   The opinion of Justice SCOTT
of the Appellate Division, so far as it discusses the ques-
tion upon which we place our decision, is approved."

As will be observed, in the *Anderson* case we did not
pass upon the question as to whether or not the zone law
operated as an incumbrance upon the real property or
approve anything stated in the opinion of the Appellate
Division relating thereto.   We have, however, passed
directly upon the question in a later case, and held that the
Zoning Law which is a valid exercise of the police power
did not constitute an incumbrance upon property con-
tracted to be conveyed " free from all incumbrances."
(*Lincoln Trust Co.* v. *Williams Bldg. Corp.*, 229 N. Y. 313,
reiterated in *Biggs* v. *Steinway & Sons*, 229 N. Y. 320.)

Chapter 137, Laws of 1920, is entitled "An act in
relation to summary proceedings to recover the possession
of real property in cities of the first class, or in cities
in counties adjoining a city of the first class during the
existing emergency."

Prior to April 1st, 1920, tenants occupying apartments
in the building on the premises in question who held over
and continued in possession thereof after the expiration of

his or her term were removable therefrom under chapter 17, title 2 of the Code of Civil Procedure, through proceedings familiarly known as summary proceedings, originally provided for in the Revised Statutes for the purpose of avoiding delay and expense incident to an action to recover possession of real property. The power of the legislature to repeal, modify or limit the application of the law providing for such summary proceedings was co-equal with a power to provide the same. We had occasion to pass upon the legislation enacted at the regular and special sessions of the legislature in 1920, known as the Emergency Laws, and upheld the validity of the same. (*People ex rel. Durham Realty Corp.* v. *La Fetra*, 230 N. Y. 429.) Chapter 137, Laws of 1920, in the title of the act mentions an emergency during which the law is to be effective. The existing emergency at the time of the enactment of that law is so well known and treated of in the *La Fetra* case that further reference to the same will be omitted. It were well, however, to refer to the act in question to ascertain the scope and effect thereof. The statute did not abolish the summary proceedings authorized by the existing law, but merely modified the same so as to permit the court in which the proceeding was pending, in its discretion and upon proof of certain facts, to stay the issuance of a warrant for a period not to exceed twelve months upon the condition that during such period the occupant should pay for the use of the premises at the rate for which he was liable for the month immediately prior to the expiration of his term, plus such additional amount, if any, as the court might determine to be reasonable. The statute necessarily prevented the landlord from summarily removing tenants in possession after the expiration of their terms and selecting other tenants; nevertheless it secured to him a reasonable rental for his apartments and in the existing emergency prevented many families from being rendered homeless. In the *Durham Realty Co. Case* (*supra*) Judge POUND,

writing for this court, said (p. 440): "The legislature might repeal or suspend in whole or in part the remedy of summary proceedings for the possession of real property provided by the Code of Civil Procedure. The landlord has no vested or contractual property right in any particular form of remedy so long as he is permitted effectively to recover possession of his real property and the only effect of the law in question is temporarily to deprive the landlord of the summary remedy given by statute, except in certain cases. A general act abolishing such remedy would not impair the obligation of the contract." (Citing *Conkey* v. *Hart*, 14 N. Y. 22.) The language quoted is so concise and applicable to the present case that further comment is unnecessary.

This action, as stated, is solely one for breach of contract. The record is barren of any findings disclosing a liability on the part of defendant for any violation of the contract on its part.

The judgment of the Appellate Division should be reversed and the judgment of the Special Term reinstated, with costs in this court and the Appellate Division.

HISCOCK, Ch. J., CARDOZO, POUND, McLAUGHLIN and CRANE, JJ., concur; ANDREWS, J., absent.

Judgment accordingly.