ADAMS, HARKNESS & HILL, INC. & another *vs.*
NORTHEAST REALTY CORPORATION.

Suffolk.    January 11, 1972. — April 7, 1972.

Present: TAURO, C.J., CUTTER, QUIRICO, & HENNESSEY, JJ.

*Res Judicata.    Collateral Estoppel.    Equity Pleading and Practice,*
Declaratory proceeding.    *Equity Jurisdiction,* Declaratory relief,
Multiplicity of actions.    *Landlord and Tenant,* Subletting, Rent.

Under G. L. c. 231, §§ 104, 102C, as amended, the decision of a District
    Court in an action first tried there and then retried in the Superior
    Court has prima facie effect only at the Superior Court retrial of the
    same action; only the ultimate decision of the District Court judge,
    and none of his subsidiary findings, is admissible at the Superior
    Court retrial; and the District Court decision is prima facie evi-
    dence at the Superior Court retrial as to all issues raised by the
    pleadings in the action.  [555–556]
Where an issue whether a lessor had unreasonably withheld its consent
    to subletting the leased premises to a proposed subtenant had been
    raised by the pleadings in an action by the lessor in a Municipal
    Court to recover one month's rent from the lessee, a general finding
    for the lessor was also an implicit finding in favor of the lessor on
    the consent issue [556]; however, in a Superior Court proceeding
    which was not a retrial of the Municipal Court action under G. L.
    c. 231, §§ 104, 102C, as amended, but was a suit for declaratory
    relief by the lessee against the lessor to determine the rights of
    parties under the lease, the findings of the Municipal Court judge
    had no effect in the proof or evidence before the Superior Court;
    nor was the Municipal Court decision effective by way of estoppel
    or res judicata in the Superior Court suit where that decision had
    never gone to judgment [556].
In a suit in equity for declaratory relief brought by a lessee against
    the lessor after the lessor had had a finding in its favor in an
    action in a Municipal Court for one month's rent against the
    lessee, which had vacated the leased premises, a final decree declar-
    ing that the lessor was not entitled to any rent from the lessee and
    enjoining the lessor from commencing any new actions for rent was,
    on the facts, an appropriate exercise of powers under G. L. c. 231A
    and in equity to avoid a multiplicity of actions.  [556–557]
A finding that the lessor under a lease forbidding a subletting without
    the consent of the lessor, which the lessor was not to withhold
    unreasonably, was arbitrary and unreasonable in refusing to accept
    a proposed subtenant was warranted by the evidence and justified
    a ruling that after such refusal and vacation of the premises by
    the lessee, the lessee was relieved from any further obligation to
A finding was warranted that a lessee surrendered the leased premises
    pay rent for the entire remaining period of the lease.  [557]

when the lessee vacated the premises and notified the lessor that the latter's action in rejecting a proposed subtenant was a breach of the lease. [557]

BILL IN EQUITY filed in the Superior Court on January 14, 1970.

The suit was heard by *Rutledge*, J.

*Leslie H. Rudick* (*Jordan L. Ring* with him) for the defendant.

*Daniel H. Kelleher* for the plaintiffs.

HENNESSEY, J. This bill for declaratory relief was brought by the lessee, Adams, Harkness & Hill, Inc. (Harkness), against the lessor, Northeast Realty Corporation (Northeast), to determine the rights of the parties under a written lease dated July 3, 1967. Northeast appeals from a final decree declaring that it is not entitled to recover any rent from Harkness under the lease and permanently enjoining it from commencing any new actions for rent under the lease. We have before us a report of material facts and a transcript of the evidence.

The facts are here set forth. On July 3, 1967, Northeast entered into a written lease with Weston W. Adams & Co., a limited partnership engaged in the stock brokerage business. The lease was for a term of five years commencing on September 1, 1967, and related to certain office space in a building located in Boston. The annual rental of $12,690 was payable in equal monthly amounts of $1,057.50. The terms of the lease provided that the demised premises were "to be used solely and continuously as a stock brokerage office." It also stated that "[t]he Lessee further covenants and agrees with the Lessor that, during this Lease and for such further time as the Lessee shall hold the demised premises or any part thereof, the Lessee . . . will not assign this Lease nor underlet the whole or any part of the demised premises without first obtaining on each occasion the written consent of the Lessor, which consent the Lessor will not unreasonably withhold."

In late 1968, Weston W. Adams & Co. and Harkness

& Hill, Inc., merged under a plan of reorganization whereby the latter changed its name to Adams, Harkness & Hill, Inc., and acquired the partnership assets and assumed the liabilities of Weston W. Adams & Co., including "as an organizational expense to the corporation, any expense of terminating the presently effective lease." By letter dated January 14, 1969, Harkness notified Northeast of the merger and stated that it would shortly submit to Northeast for its approval a subtenant for the premises covered by the lease. From January, 1969, to August of that year Northeast accepted rent payments due under the lease from Harkness and from May to August of that year Northeast addressed all rent bills to Harkness.

On April 14, 1969, Harkness submitted the name of Reclamations Systems, Inc., to Northeast for approval as subtenant. By letter dated April 25, 1969, Northeast informed Harkness that it would not accept the proposed subtenant because "your space is to be used solely and continuously as a stockbroker's office." Subsequently, Harkness submitted for approval the name of Mann & Company (Mann), a stockbrokerage house registered in Massachusetts. Northeast responded by requesting Harkness to submit a complete financial statement of Mann in order to assist Northeast in determining whether the proposed subtenant would be able to meet the rental obligations. Harkness then forwarded a statement which showed that Mann had a profit for the month of January of $18,945.26 and a net worth in excess of $120,000 as of January 31, 1969. Also, in May and June, 1969, Harkness had assured Northeast that it would agree to be responsible for the payment of rent if Mann was accepted as the subtenant. Nevertheless, Northeast refused to accept Mann and informed Harkness on August 20, 1969, that in Northeast's opinion Mann was not financially qualified. Thereafter, Harkness vacated the premises and notified Northeast that its action in rejecting the proposed subtenant was a breach of the Lease.

Northeast brought an action against Harkness in the Municipal Court of the City of Boston to recover the rent due under the lease for the month of September. The Municipal Court judge entered detailed subsidiary findings in which he found, among other things, that Mann was not of adequate financial means and that Northeast did not unreasonably withhold its assent to allowing Mann to occupy the premises as a subtenant. Consequently, he awarded Northeast the rent for September. On motion of Harkness and pursuant to G. L. c. 231, §§ 104, 102C, both as amended, the case was removed to the Superior Court for a trial de novo. However, before any trial was had in the matter, Harkness brought this present bill in equity seeking a declaration of its rights under the lease. The Superior Court judge found, among other things, that Northeast was arbitrary and unreasonable in its refusal to accept Mann as a subtenant and declared that Northeast was not entitled to recover any rent under the lease from Harkness. In so concluding, the judge excluded the detailed subsidiary findings of the Municipal Court judge, "noting only that the decision of the lower court was in a specified amount and was in favor of Northeast."

1. Northeast argues that the findings of the Municipal Court judge were conclusive and required a final decree consistent with its position or, in the alternative, that the Superior Court judge improperly refused to give appropriate effect, in proof and evidence, to the findings of the Municipal Court judge. We disagree with both arguments.

After trial in the Municipal Court, the case was removed to the Superior Court at the request of Harkness, under the terms of G. L. c. 231, §§ 104, 102C. An examination of the terms of the statutes indicates that (1) the Municipal Court decision has prima facie effect only at a Superior Court retrial of the *same case*, (2) only the ultimate decision of the Municipal Court judge (in this case, $1,057.50 for Northeast), and none of his subsidiary findings, is admissible in the Superior Court

retrial, and (3) the Municipal Court decision is prima facie evidence at a Superior Court retrial as to all the issues raised by the pleadings in the case. We agree with Northeast that the principal issue before the Superior Court judge, viz., whether Northeast had unreasonably withheld its consent to subletting the premises to Mann, had been raised by the pleadings before the Municipal Court judge and, therefore, his general finding for Northeast was also an implicit finding in favor of Northeast as to the consent issue. *Spritz* v. *Lishner,* 355 Mass. 162, 164–165. Nevertheless, this avails Northeast nothing. Since the Superior Court case before us was not a retrial of the case which had been tried in the Municipal Court, the latter court's findings had no effect in the proof or evidence before the Superior Court judge. Consequently, the Superior Court judge, in ruling that he would consider in evidence the Municipal Court decision, gave that decision more consideration than Northeast could rightfully claim. Additionally, the Municipal Court decision had no effect by way of estoppel or res judicata in the Superior Court case since that decision had never gone to judgment. *Hacker* v. *Beck,* 325 Mass. 594, 597. *Cambria* v. *Jeffery,* 307 Mass. 49, 50, and cases cited. See *Home Owners Fed. Sav. & Loan Assn.* v. *Northwestern Fire & Marine Ins. Co.* 354 Mass. 448, 455.

Northeast also contends that the purpose of G. L. c. 231, §§ 104, 102C, has been subverted by reason of the order of the Superior Court judge restraining any further proceedings after the Municipal Court trial, and later entering a decree in favor of Harkness. We disagree. The actions of the judge were an appropriate exercise of his powers under G. L. c. 231A, and his powers in equity to take measures aimed at avoiding a multiplicity of suits. *New York Cent. R.R.* v. *William Culkeen & Sons Co.* 249 Mass. 71, 78, and cases cited. *Parkway, Inc.* v. *United States Fire Ins. Co.* 314 Mass. 647. The original action brought by Northeast concerned only one month's rent, whereas the bill filed under G. L.

c. 231A, and tried to a conclusion in the Superior Court, resulted in a decree which finally determined all of the issues pertaining to the entire duration of the lease.

2. Northeast also argues that the Superior Court judge was in error in ruling that, since Northeast had admittedly accepted Harkness as a successor tenant to Weston W. Adams & Co., thereafter Harkness had the right to sublet the premises without the landlord's consent. *Dumpor's Case*, 4 Co. Rep. 119. *Saxeney* v. *Panis*, 239 Mass. 207. *Paeff* v. *Hawkins-Washington Realty Co. Inc.* 320 Mass. 144. Northeast contends that the express nonwaiver provision in the lease precludes such a ruling. We need not consider this issue since the judge also found that Northeast was arbitrary and unreasonable in its refusal to accept Mann as a subtenant. This finding was warranted by the evidence, particularly in view of the undisputed evidence that Harkness had offered to guarantee the payment of the rent by Mann for the entire term of the lease. The judge's ruling was also correct that, after the date of Northeast's unreasonable refusal to accept Mann as subtenant, Harkness was relieved from any further obligation to pay rent for the entire remaining period of the lease. *Papanastos* v. *Heller*, 227 Mass. 74, 76. Hall, Landlord and Tenant (Adams and Wadsworth's 4th ed.) § 66.

3. Finally, we reject Northeast's argument that Harkness had never surrendered the premises. The judge warrantably found that Harkness vacated the premises in August, 1969, and, at that time, notified Northeast that the latter's action in rejecting the proposed subtenant was a breach of the lease.

> *Decree affirmed with costs of appeal.*