THE DOVER POOL & RACQUET CLUB, INC. *vs.* G. EDWARD
BROOKING & another.[1]

Norfolk. December 4, 1974. — January 13, 1975.

Present: TAURO, C.J., REARDON, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Contract,* For sale of real estate, Rescission.

A purchase and sale agreement in which the seller promised to convey title "free from encumbrances, except . . . existing building and zoning laws" placed on the buyer the risk that zoning restrictions on the property would be enacted between the time of the agreement and the time of the deed. [631-632]

Where both parties to a purchase and sale agreement were unaware that public notice had been given of a hearing on a proposed zoning by-law, which would, if enacted, restrict as of the date of the notice the use of the property the seller knew was intended by the purchaser, the purchase and sale agreement, not allocating this risk, was voidable by the purchaser for mutual mistake of fact. [632-634]

---

[1] Ruth D. Brooking, his wife.

BILL IN EQUITY filed in the Superior Court on May 1, 1972. The suit was heard by *Brogna*, J.

*James P. Whittier, III*, for the defendants.

*Ralph C. Copeland* (*Albert S. Robinson* with him) for the plaintiff.

BRAUCHER, J.    On January 31, 1972, the parties entered into a written contract for the sale of real estate in Dover and Medfield. A few days earlier, unknown to them, the planning board of Medfield had published a notice of a public hearing on a proposed amendment to the zoning by-law. The proposed amendment would newly require a special permit for the use of the premises contemplated by both the vendor and the purchaser, and under G. L. c. 40A, § 11, the amendment if adopted would have effect retro-active to the date of publication. The purchaser sought rescission of the contract and return of its deposit. A judge of the Superior Court decreed rescission and return because of a mutual mistake of fact, and we affirm.

The case was referred to a master, whose report was confirmed except for its conclusions. We summarize the master's findings. The Brookings owned about fifty acres of land, nine acres in Medfield and the rest in Dover, used as a single family residence. The buildings were in Dover, and the only established access was through the Medfield portion. During negotiations with the purchaser (the Club) the Brookings were informed that the Club intended to use the property for a nonprofit tennis and swim club.

Both the Dover and the Medfield zoning by-laws per-mitted use of the premises as of right for a "club when not conducted for profit and not containing more than five sleeping rooms." The parties discussed the zoning by-law of Dover. The Brookings asked their broker about zoning, and he replied that everything would be all right under the existing Dover and Medfield by-laws. The vice-president of the Club who signed the agreement checked both the Dover and the Medfield zoning by-laws.

The agreement, signed on January 31, 1972, provides for conveyance of "a good and clear record and marketable title thereto, free from encumbrances, except (a) Provisions

of existing building and zoning laws . . .." The planning board of Medfield on January 27 and February 3, 1972, published notice of a public hearing on February 14, 1972, on proposed amendments to the Medfield zoning by-law, including a requirement of a special permit for use of the Medfield portion of the premises as a "non-profit country, hunting, fishing, tennis or golf club without liquor license." Neither of the parties was aware of the notice, but the Club's board of directors became aware of it about ten days before the agreed closing date of March 1, 1972. The parties met on the closing date, and the Brookings were prepared to deliver a deed, but the Club refused to proceed with the purchase. The proposed zoning amendment was adopted at the Medfield town meeting on March 21, 1972, and approved by the Attorney General in July, 1972.

In general building and zoning laws in existence at the time a land contract is signed are not treated as encumbrances, and the purchaser has no recourse against the vendor by virtue of restrictions imposed by such laws on the use of the property purchased. See Am. Law of Property, § 11.49 (1952); annotation, 39 A. L. R. 3d 362, 370 (1971). Moreover, changes in such laws after the contract is signed have commonly been held to be part of the risk assumed by the purchaser. *Urbis Realty Co. Inc.* v. *Globe Realty Co.* 235 N. Y. 194, 204 (1923). *DiDonato* v. *Reliance Standard Life Ins. Co.* 433 Pa. 221, 224 (1969). *Kend* v. *Herbert Fin. Co.* 210 Wis. 239, 242 (1933). See Corbin, Contracts, § 1361 (1962). Cf. *Essex-Lincoln Garage, Inc.* v. *Boston,* 342 Mass. 719, 721-722 (1961) (lease). In some such cases, however, specific performance at the suit of the vendor has been denied, particularly where both parties knew of the contemplated use later prohibited. *Anderson* v. *Steinway & Sons,* 178 App. Div. (N. Y.) 507, 515 (1917), affd. 221 N. Y. 639 (1917). *Clay* v. *Landreth,* 187 Va. 169, 179-180 (1948). Cf. *Lee Builders, Inc.* v. *Wells,* 33 Del. Ch. 439, 442 (1953) (suit by purchaser).

In the present case the agreement itself makes it explicit that "existing building and zoning laws" are not included in the vendor's obligation to convey "free from encum-

brances." The Club argues, by contrasting the quoted exception with other exceptions,[2] that the building and zoning laws excepted are those "existing" on the date of the agreement, but we think it is clear that the reference is to laws "existing" on the date of the deed. *Kares* v. *Covell,* 180 Mass. 206, 209 (1902). In other words, the purchaser bore the risk of zoning laws in effect on the date of closing.

We have upheld a decree of rescission of a sale of land by reason of misrepresentations of the zoning situation by the vendors, and in doing so assumed that there would be no liability for bare nondisclosure. *Kannavos* v. *Annino,* 356 Mass. 42, 46-47 (1969). Cf. *Levin* v. *Favorite,* 226 Md. 626, 628 (1961). In other States rescission has been decreed on the basis of mutual mistake of fact in circumstances like those before us. *Hannah* v. *Steinman,* 159 Cal. 142, 149-150 (1911). *Williams* v. *Puccinelli,* 236 Cal. App. 2d 512, 520 (1965). *Bradshaw* v. *Kinnaird,* 319 S. W. 2d 475, 477 (Ky. 1958). *Millman* v. *Swan,* 141 Va. 312, 321-322 (1925). Cf. *Mariani* v. *Gold,* 13 N. Y. Supp. 2d 365, 366 (1939). See Corbin, Contracts, § 605 (1960); Restatement: Contracts, § 502, illustration 4 (1932); Restatement: Restitution, § 48 (1937). We have long recognized that land contracts may be rescinded for mutual mistake. *Spurr* v. *Benedict,* 99 Mass. 463, 466 (1868). *Kyle* v. *Kavanagh,* 103 Mass. 356, 359-360 (1869). *Jeselsohn* v. *Park Trust Co.* 241 Mass. 388, 392 (1922). Cf. *Golding* v. *108 Longwood Ave. Inc.* 325 Mass. 465, 468 (1950) (lease). See *Cook* v. *Kelley,* 352 Mass. 628, 632 (1967). But we seem not to have been called on to pass upon a mistake as to zoning.

The Medfield zoning amendment was not an "existing" zoning law at the time of the closing. It was not an encumbrance and it was not within the exception in the agreement. Yet under G. L. c. 40A, § 11, the notice published four days before the agreement was signed had a

---

[2] The agreement provides that the deed shall convey a title "free from encumbrances, except (a) Provisions of existing building and zoning laws; (b) [deleted]; (c) Such taxes for the then current year as are not due and payable on the date of the delivery of such deed; (d) Any liens for municipal betterments assessed after the date of this agreement; (e) None Other."

material impact on the purchaser's intended use of the premises. After the notice was published, the issuance of a building permit or the beginning of work on a building or structure would not protect the purchaser if the steps required for the adoption of the proposed amendment were taken in their usual sequence without unnecessary or unreasonable delay. *Doliner* v. *Planning Bd. of Millis,* 343 Mass. 1, 6-7 (1961). Cf. *Alexander* v. *Building Inspector of Provincetown,* 350 Mass. 370, 375-376 (1966); *Nyquist* v. *Board of Appeals of Acton,* 359 Mass. 462, 465-466 (1971). Meanwhile, no special permit could be issued under the proposed amendment before it was enacted. The agreement provides "that time is of the essence of this agreement," and the record does not indicate any willingness by the vendor to extend the time for closing until after the town meeting which was to act on the proposed amendment. Under *Harrison* v. *Building Inspector of Braintree,* 350 Mass. 559, 561 (1966), use of the only established access to the premises might be barred if no special permit were obtained.

Thus at the time the contract was made both parties made the assumption that the zoning by-laws interposed no obstacle to the use of the premises for a nonprofit tennis and swim club. That assumption was mistaken, and we think it was a basic assumption on which the contract was made. It could not yet be said that the purchaser's principal purpose had been frustrated. Cf. Restatement 2d: Contracts (Tent. draft No. 9, April 8, 1974), § 286 (2), and illustration 6. But a right of vital importance to the purchaser did not exist, and as a result of the mistake enforcement of the contract would be materially more onerous to the purchaser than it would have been had the facts been as the parties believed them to be. The contract was therefore voidable by the purchaser unless it bore the risk of the mistake. The agreement does not provide for that risk, and the case is not one of conscious ignorance or deliberate risk-taking on the purchaser's part. Nor do we think there is any common understanding that purchasers take the risk of the unusual predicament in which the purchaser found it-

self. We therefore agree with the judge's conclusion that the contract was voidable for mutual mistake of fact.

*Decree affirmed with costs of appeal.*