JAMES F. MALONEY & another[1] *vs.* DUANE T. SARGISSON.

Worcester. December 9, 1983. — July 3, 1984.

Present: GREANEY, C.J., ARMSTRONG, & KASS, JJ.

*Practice, Civil,* Action transferred to District Court. *Evidence,* Prima facie evidence. *Contract,* Sale of real estate, Rescission, Mistake. *Fraud.*

Where, at the trial of an action by the buyer of a parcel of land against the seller, a District Court judge made findings for the defendant on issues of misrepresentation, breach of warranty, and violation of G. L. c. 93A but, not having jurisdiction over equitable claims, did not consider issues of mutual mistake and rescission, the prima facie effect accorded the District Court decision by G. L. c. 231, § 102C, did not preclude a Superior Court judge, on retransfer of the case, from ordering summary judgment for the buyer, awarding rescission of the transaction on the ground of mutual mistake. [343-345]

Where an agreement for the purchase and sale of land provided that it was contingent on satisfactory percolation and deep hole tests to qualify for a building permit, and where the purchasers paid the purchase price and accepted delivery of a deed after an engineer whom they had hired to make the tests reported that the land would support a septic system for a residence, the purchasers were not entitled to rescission of the transaction on the ground of mutual mistake after they discovered that the presence of a drain running under a street along the property and emptying into a reservoir would preclude construction of a septic system on the property. [345-347]

In the circumstances, the affidavits submitted by the plaintiffs in an action arising from a purchase and sale of real estate showed no genuine issue of material fact respecting the theories of misrepresentation, breach of warranty or violation of the Consumer Protection Act. [347]

CIVIL ACTION commenced in the Superior Court Department on August 3, 1979.

Following trial in the Central Worcester Division of the District Court Department and retransfer to the Superior Court

---

[1] Barbara D. Maloney.

Department, the case was heard by *Mulkern, J.*, on motions for summary judgment.

*Patrick J. Melnik* for the plaintiffs.

*Michael W. Sowyrda* for the defendant.

KASS, J. Some five months after they acquired the locus, the Maloneys learned that a concrete drain line which emptied into the Quabbin Reservoir ran under the street on which their property fronted. The meaning of that discovery was that their land, as a practical matter, could not be built upon. A Superior Court judge, acting on cross motions for summary judgment, determined that the parties had been mutually mistaken about a fact which was fundamental to the sale of the locus from Mr. Sargisson, the seller, to the Maloneys, and ordered rescission. Whether a mutual mistake of fact occurred is a principal issue on appeal.

We rehearse the salient facts. On November 5, 1977, the Maloneys and Mr. Sargisson entered into a purchase and sale agreement, which the Maloneys prepared,[2] for the purchase by the Maloneys at the price of $3,900 of a two-acre lot in Petersham. Soil conditions were on the minds of the Maloneys from the outset. They typed onto the rudimentary form of agreement which they used, "This agreement is contingent upon this land passing a perculation [*sic*] test and deep hole[3] test to qualify for a building permit. Said tests to be done at the expense of the buyer."

In December, 1977, an engineer whom the Maloneys hired made the percolation and deep hole tests and reported that the land had passed the tests, i.e., that it would support a septic system for a residence. On the basis of that information the Maloneys paid the purchase price and took delivery of a deed on December 22, 1977. Spring brought darker news. An application for a sewage disposal permit made by the Maloneys in May, 1978, to the board of health of Petersham was denied. Regulations of the board required that the deep hole test be performed from January to May of the year in which the permit

---

[2] Mrs. Maloney is a licensed real estate broker. Mr. Sargisson is a lawyer.

[3] See 310 Code Mass. Regs. § 15.03(3) (1978), describing the purpose of deep observation holes, and how observations are to be made.

was sought. The percolation test, under the board's regulations, was to be conducted in the same year as the deep hole test. The tests performed in 1977, therefore, did not support 1978 permit applications.[4]

A second deep hole test, made May 12, 1978, was adverse. More to the point, it came to the attention of the Maloneys and the board of health at about that time that there was under East Street, along which the locus was located, a concrete drain which ran into the Quabbin Reservoir. Inquiry with the Department of Environmental Quality Engineering disclosed that, in accordance with 310 Code Mass. Regs. § 15.03(7) (1978), a leaching facility could not be built within 100 feet of a drain to a reservoir. No area outside the 100-foot forbidden zone proved suitable for a leaching field. Attempts to obtain a variance (see 310 Code Mass. Regs. §§ 15.20 & 15.21 [1978]) of the 100-foot restriction were not successful.

Approximately a year later, the Maloneys, thwarted in finding a way to construct a sewage facility, threw in the sponge and made demand under G. L. c. 93A, § 9, upon Mr. Sargisson to take the land back and return the $3,900 purchase price, an invitation he declined.

1. *Status of District Court decision.* The action which followed was filed in the Superior Court and stated claims of misrepresentation, breach of warranty, unfair and deceptive practices and, by dint of a generous reading of the complaint, see *Charbonnier* v. *Amico,* 367 Mass. 146 152-153 (1975), mutual mistake. A transfer to a District Court occurred under G. L. c. 231, § 102C, first par. In a memorandum of decision, a District Court judge found that: William Berry, Jr., the engineer whom the Maloneys had hired, was an expert in the design and layout of septic systems; there was no evidence that Mr. Sargisson knew or should have known about the existence of the drain beneath the surface of East Street; and Mr. Sargisson, a lawyer, had represented nothing more than that title was good. The judge determined that there was no

---

[4]Neither side has furnished texts of the town's regulations and we have accepted the parties' uncontroverted statements about their substance.

misrepresentation, no breach of warranty, and no violation of G. L. c. 93A. Quite properly, the District Court judge did not treat expressly the mutual mistake and rescission aspects of the case, as the District Courts do not, save for limited exceptions, have jurisdiction over equitable claims. G. L. c. 214, § 1.[5] Upon the Maloneys' request, the case was retransferred to the Superior Court pursuant to G. L. c. 231, § 102C, third par.

As to "such matters as are put in issue by the pleadings" the decision of a District Court is prima facie evidence when an action is tried anew in the Superior Court on retransfer. G. L. c. 231, § 102C, fifth par., as appearing in St. 1978, c. 478, § 262. *O'Brion Russell & Co.* v. *LeMay*, 370 Mass. 243, 244-245 (1976). *Sylon Indus., Inc.* v. *Trim Knit, Inc.*, 13 Mass. App. Ct. 970 (1982). Only the general finding — i.e., the ultimate decision — of the District Court, and none of that court's subsidiary findings, is admissible in the Superior Court. *Lubell* v. *First Natl. Stores, Inc.*, 342 Mass. 161, 163-164 (1961). *Adams, Harkness & Hill, Inc.* v. *Northeast Realty Corp.*, 361 Mass. 552, 555-556 (1972).

Mr. Sargisson urges that the District Court judge's general finding for him should be taken as putting in controversy the facts averred in the Maloneys' affidavit, so as to forestall summary judgment in their favor in the Superior Court. Cf. *Community Natl. Bank* v. *Dawes*, 369 Mass. 550, 556 (1976). That presupposes, however, that the prima facie weight of the District Court finding carries over to the Superior Court proceeding even as to issues raised by the pleadings which were not before the District Court. We think the Superior Court judge correctly read § 102C less expansively. District Court findings have prima facie weight in retransfer under § 102C insofar as they pertain to the same case. *Adams, Harkness & Hill, Inc.* v. *Northeast Realty Corp.*, 361 Mass. at 555. *Dwyer* v. *Hearst Corp.*, 3 Mass. App. Ct. 76, 78 (1975). In the latter case, as here, the division of the case arose from separate

---

[5] See generally Nolan, Equitable Remedies §§ 11-17 (1975). See, however, G. L. c. 218, § 19C, granting equity powers to the District Courts to enforce the State Sanitary Code (G. L. c. 111, §§ 127A-127K), which constitutes one of several specific exceptions to the general rule.

counts in the same pleading; in the *Adams* case, there were separate pleadings, both, however, arising from the same set of facts. We observed in *Sylon Indus., Inc.* v. *Trim Knit, Inc.,* 13 Mass. App. Ct. at 971, that "the term 'pleadings' as used in § 102C encompasses all questions of law or fact which could have been raised . . . in the District Court."

It follows that as to the equity issues, which could not have been raised in the District Court, the decision of the District Court had no weight. This is not merely logical; it is also practical. It is unlikely that a District Court judge, in arriving at a decision, will have considered elements of a case not within his jurisdiction, even if intertwined factually with those portions of a case which are properly before him. The instant case illustrates the point: the District Court judge filed a memorandum of decision which deals with misrepresentation, breach of warranty, and chapter 93A issues, but does not touch on mutual mistake.[6]

2. *Mutual mistake.* Mutual mistake is one of those familiar legal principles which is easier to state than to apply. Our cases, as we observed in *Covich* v. *Chambers,* 8 Mass. App. Ct. 740, 749 (1979), are substantially in accord with the articulation made in Restatement (Second) of Contracts § 152 (1979) which provides: "(1) Where a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of the mistake . . . ." In the instant case neither party knew that a drain under East Street reduced very substantially (by about one-third) the land area available for a septic system and, to that extent, there may have been a mistake about a basic assumption, viz., that the locus was, in the parlance of the construction trade, a buildable lot. The buyers, however, by the agreement they drafted assumed the burden of making soil tests to determine

[6]The inability of a District Court to deal with the equity components of an action raises some question about the efficiency of a transfer to a District Court where that factor is present. In the instant case the transfer is more than understandable because the equity factor was so elliptically pleaded.

if the lot would "qualify for a building permit." In so doing they bring into play § 154(a) of the Restatement (Second) of Contracts: "A party bears the risk of a mistake when the risk is allocated to him by agreement of the parties." See *Covich v. Chambers,* 8 Mass. App. Ct. at 750-751. See also *Albert Elia Bldg. Co.* v. *American Sterilizer Co.,* 622 F.2d 655, 656-657 (2d Cir. 1980). The party which undertakes to test soil conditions can fairly be required to secure soil tests made in locations and at times prescribed by State and local regulations. If, as in this case, mistakes are made in performing the tests, they are unilateral mistakes by the buyer, not mutual ones.

The facts in the case at bar are unlike those in *Jesselsohn v. Park Trust Co.,* 241 Mass. 388 (1922), and *Dover Pool & Racquet Club, Inc.* v. *Brooking,* 366 Mass. 629 (1975), upon which the plaintiffs rely. In *Jesselsohn,* the parties believed there was a house on a lot which was the subject of a mortgage assignment, but the house turned out to be built on the wrong lot. Not only was there "misapprehension as to a material and essential circumstance," but the facts were peculiarly in the knowledge of the party opposing rescission. *Jesselsohn* v. *Park Trust Co. supra,* at 392. In the *Dover Pool & Racquet Club,* case, a notice of proposed change in zoning by-law, potentially adverse to the buyers, had, unbeknownst to either buyer or seller, been published four days before the parties entered into a purchase and sale agreement. The buyer was, thus, left in suspense as to what zoning would be applicable to the property it had contracted to buy. Under the contract, the court determined, the purchaser had not borne the risk of the "unusual predicament in which [it] found itself." *Dover Pool & Racquet Club, Inc.* v. *Brooking, supra,* at 633. Contrast also *Miller* v. *Reynolds,* 216 Va. 852, 853-854 (1976), in which sellers, albeit innocently, provided the buyers with a misleading soil study at closing. Compare *Spurr* v. *Benedict,* 99 Mass. 463, 466-467 (1868); *Golding* v. *108 Longwood Ave., Inc.,* 325 Mass. 465, 468 (1950). Rather, the case at bar is more like *Covich* v. *Chambers,* 8 Mass. App. Ct. at 751, in that the buyer assumed the risk of properly conducting soil tests. Published State regulations about the location of disposal facilities

in relation to matters of environmental concern may not be common currency, but neither ought we to consider them in the realm of the esoteric. See Mendler, Massachusetts Conveyancers' Handbook §§ 1:8.01, 13:2, 13:4.01 (3d ed. 1984). We conclude that, on the undisputed facts, there was not a mutual mistake of fact as to the basic assumption on which the contract was made.

3. *The misrepresentation, breach of warranty and chapter 93A counts.* As to these aspects of the Maloneys' claim the decision of the District Court judge was adverse and carried weight as prima facie evidence in the Superior Court. The Superior Court judge determined that the Maloneys had not mounted a response to rebut the District Court finding which would show that there was a genuine issue for trial. *O'Brion, Russell & Co.* v. *LeMay,* 370 Mass. at 245. In fair measure the judge did so because his conclusion that there had been a mutual mistake was inconsistent with breach of warranty, tortious misrepresentation, and a consequent violation under G. L. c. 93A; i.e., mutual mistake assumes a good faith misunderstanding which is nobody's fault. We think, however, that the Superior Court judge's conclusions are supportable on another ground. James F. Maloney's affidavit filed in the Superior Court recites that the defendant, "who is a [l]awyer, represented to the [p]laintiffs that he knew all there was to know about the property and there was no need for the [p]laintiffs to obtain their own [l]awyer at the closing. The [d]efendant also supplied the [p]laintiff[s] with a certificate of title to the property." The affidavit also has Mr. Sargisson representing "that the lot was a good building lot and [that] he had hoped to build his own home at that location." Whatever those alleged statements may be taken to mean, the Maloneys could not have relied upon them to their detriment so far as they might have borne on the capacity of the lot to pass soil tests which would enable the Maloneys to secure a building permit. Concerning that aspect of the land's character, their affidavit discloses, the Maloneys made their own examination. Cf. *Nei* v. *Burley,* 388 Mass. 307, 311 (1983).

The judgment rescinding the transaction on grounds of mutual mistake is reversed. Judgment shall enter for the defendant dismissing the action.

*So ordered.*