McDonald, J.
The plaintiffs, Christopher S. Slade and Crossed Streams, Inc. (collectively “Slade”), com *80 menced this action to assert claims for breach of contract, misrepresentation, promissory estoppel, impossibility, unjust enrichment, quantum meruit, mutual mistake, and violation of G.L.c. 93A, arising out of a 1988 agreement permitting Slade to remove sand and gravel from the property of the defendants, David L. (“McIntyre”) and Julie A. McIntyre (“the McIntyres”). The defendants asserted counterclaims for breach of contract and specific performance. This matter is now before the court on the plaintiffs’ motion for summary judgment on all counts. For the reasons set forth below, the motion is ALLOWED on Count VII (mutual mistake). The defendants are entitled to summary judgment on Count II (misrepresentation) and Count VIII (violation of G.L.c. 93A). The remaining counts are moot.
.BACKGROUND
The following facts are undisputed. On May 8, 1988, the parties entered into an agreement, memorialized by an unsigned memorandum of understanding (“Agreement”), providing that Slade could remove 184,000 cubic yards of sand and gravel from property behind the McIntyres’ home in the Town of Ashby (“Ashby”) in return for 36 monthly payments of $6,500.00.[3] The Agreement, which gave Slade the exclusive right to remove sand and gravel from the property between June 1988 and June 1991, provided that the McIntyres would “maintain valid permits and pay all fees and expenses necessary for securing and maintaining all permits.” The Agreement indicated that the intent was to complete the removal operation in three years, but if material remained at the end of the initial three year period, the McIntyres would “work in good faith to have the permit renewed for another three year period.”
Before the parties entered into the Agreement, the McIntyres had obtained a Special Permit from Ashby’s Zoning Board of Appeals to excavate sand and gravel from the property. The Special Permit provided that the applicant “must request and receive a permit from the Board of Selectmen for excavation of sand and gravel pursuant to the town by-law adopted at the March 10, 1979 annual town meeting.” In April 1988, while the plaintiffs and defendants were negotiating the Agreement, the members of the Ashby Board of Selectmen (“Selectmen”) resigned, and were replaced with a new Board in July 1988.
When the parties entered into the Agreement, the McIntyres had not applied for an Earth Removal Permit from the Selectmen. The parties were aware, however, that other sand and gravel pits operated within Ashby. The McIntyres first submitted an application for an Earth Removal Permit to the Selectmen on July 14, 1988. The Selectmen denied the application on October 11, 1988. The McIntyres requested reconsideration of their application in January 1989, and the Selectmen upon reconsideration again denied the McIntyres’ permit application on May 12, 1989. After the Selectmen first denied their permit application in October 1988, the McIntyres sued the Selectmen in Middlesex Superior Court in December 1988. Judgment entered for the Selectmen in December 1989, and was affirmed by the Massachusetts Appeals Court on January 6, 1992. See McIntyre v. Board of Selectmen of Ashby, 31 Mass.App.Ct. 735 (1992).
To prepare the site for the mining operation, Slade constructed an access road and cleared a portion of the property. On or about May 16, 1989, Slade attempted for the first time to remove sand and gravel from the site. At that time, Ashby police stopped Slade’s vehicles and ordered Slade to stop removal of the sand and gravel because necessary permits were not in place. Between May 31, 1988 and December 1, 1989, Slade made 19 monthly payments to McIntyre totaling$123,500.00. In December 1989, following the unfavorable Superior Court decision, the parties amended the Agreement. The amendment noted that “the original memorandum did not provide for interruption of operation due to permit problems, which arise out of no fault of either party,” acknowledged Slade’s 19 payments, and suspended further monthly payments until “the permits are in place and hauling can resume.” While the amendment provided for suspension of further payment until permits were in place, it did not provide for any further extension of the time period encompassed by the Agreement.
After the 1992 Appeals Court decision, in an effort to obtain permission to remove sand and gravel from their property, the McIntyres applied for a building permit to construct a single family home on their land.[4] Site preparations for the proposed home and septic system purportedly required removal of a quantity of sand and gravel. The building permit was issued in May 1992. The McIntyres suggested Slade continue to remove sand and gravel from the property under the authority of the building permit. Although Slade removed some material, he did so on a limited and irregular basis. The Ashby Building Inspector voided the building permit in May 1993 for lack of activity, and reissued the permit in February 1994. In June 1994, the Ashby Board of Health decreed that new home construction would be permitted only upon installation and approval of a well. The building permit was again revoked pursuant to the new requirement, and reinstated in September 1994 after installation of a well. The Board of Health again revoked the permit in August 1995, because an area of the gravel pit was excavated that had been designated as the site for a sewage disposal system. Between 1988 and 1995, Slade removed approximately 16,000 of the 184,000 cubic yards of sand and gravel provided for in the Agreement.
DISCUSSION
Summary judgment is appropriate where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *81 Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat a motion for summary judgment.” Pederson v. Time, Inc., supra at 17. The opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summaryjudgment. LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
A. Mutual Mistake
Massachusetts law regarding mutual mistake is substantially in accord with the articulation made in Restatement (Second) of Contracts §152 (1979) which provides: “ ‘(1) Mere mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of the mistake . . . ’ ” Maloney v. Sargisson, 18 Mass.App.Ct. 341, 345 (1984).
Here, it is undisputed that at the time the contract was entered into, both parties made the assumption that all necessary permits were in place or procurable to allow Slade to remove the contracted-for amount of sand and gravel. The defendant, David McIntyre, stated in his affidavit that “[I]n April of 1988,1 believed that all necessary permits were in place to proceed.”[5] Aff. of Def. David L. McIntyre, Par. 6. Slade was also under this belief, relying upon representation to this effect by McIntyre.[6] See Aff. of PI. Christopher S. Slade Par. 3. The parties subsequently discovered, however, that the necessary Earth Removal Permit was not in place.
Subsequent still, the parties determined that the Earth Removal Permit could not be obtained from the new Selectmen by any means, including a lawsuit. This after the parties amended the Agreement under the mutually mistaken belief that the permit problem could be resolved. Although the McIntyres assert that Slade could have removed the contracted-for amount of sand and gravel pursuant to the building permit issued in May 1992, the building permit, which was procured as a desperation measure after all attempts to procure the required Earth Removal Permit failed, was not issued until nearly one year after the end of the original term of the contract, which ran from June 1988 to June 1991. The building permit was only in effect for 16 months of the three year extension provided for by the Agreement, because the permit was rescinded several times. Further, the McIntyres have presented no evidence, other than a bare assertion, that the building permit would have allowed removal of the volume of sand and gravel contemplated by the Agreement, even if it had been in effect for the full three year period specified by the Agreement. A mere assertion is not sufficient to defeat a motion for summary judgment. See LaLonde v. Eissner, supra at 209. At no time during the original term of the contract were all necessary permits in place to remove the sand and gravel, and the building permit was in place for less than half of the three year extension provided for by the contract.
The assumption that all permits were in place is a basic assumption upon which the contract was made. Without the Earth Removal Permit from the Selectmen, Slade had no right to remove the sand and gravel he had contracted to purchase, during the period of time contemplated in the parties’ contract. Therefore, “a right of vital importance to the purchaser did not exist, and as a result of the mistake enforcement of the contract would be materially more onerous to the purchaser than it would have been had the facts been as the parties believed them to be.” Dover Pool and Racquet Club, Inc. v. Brooking, 366 Mass. 629, 633 (1975). The contract is therefore voidable by Slade, unless he bore the risk of mistake. Id. The contract does not place such a risk on Slade, and “the case is not one of conscious ignorance or deliberate risk-taking” on Slade’s part. Id. McIntyre believed, and does not deny Slade’s assertion that he represented to Slade, that the necessary permits were in place when the Agreement was executed. Obviously, such a representation was entirely consistent with McIntyre’s dearly held belief. Accordingly, the agreement between Slade and the McIntyres is voidable for mutual mistake of fact, and Slade is entitled to rescission of the contract.
Rescission ordinarily requires that each party restore all that he received under the contract. See Cherry v. Crispin, 346 Mass. 89, 93 (1963). Where complete restoration of the defendant’s property is not possible, however, rescission may nonetheless be granted by awarding the plaintiff the purchase price paid by him less the fair value of the property transferred by the defendant. See Putnam v. Bolster, 216 Mass. 367, 372 (1914) (holding that in a contract rescission the plaintiff could recover back the portion of the purchase price paid less the value of the defendant’s property the plaintiff had sold); Bellefeuille v. Medeiros, 335 Mass. 262, 266 (1957) (holding that where complete restoration is not possible, “rescission may, nevertheless be granted upon such equitable conditions as would amply protect the rights of the defendant”); Cherry v. Crispin, supra at 93. Accordingly, Slade is entitled to recover the purchase price paid, $123,500.00, less the value of the sand and gravel received. The parties agree that the contract was for the purchase of 184,000 cubic yards of dirt, for consideration of $234,000.00. The parties also agree that Slade removed 16,000 cubic yards of dirt, or 8.6957% of the total. Using the figures supplied by the *82 parties, the value of the sand and gravel actually removed by Slade is $20,347.94. Slade, therefore, is entitled to the return of $103,152.06 of the purchase price paid.
B. Remaining Claims
Rescission of the contract and restitution renders moot the plaintiffs’ claims for breach of contract, promissory estoppel, impossibility, unjust enrichment, and quantum meruit, and the defendants’ counterclaims for breach of contract and specific performance. “Even in the absence of a statute or a rule of the court, a judge has ‘the right and duty to keep the judicial system in efficient operation.’ Thus, a judge has the power, not derived from any rule, to dismiss a complaint on his or her own initiative . . .” National Grange Mut. Ins. Co. v. Walsh, 27 Mass.App.Ct. 155, 156-57 (1989). Accordingly, Counts I, III, IV, V, and VI of the plaintiffs’ complaint and both counts of the defendants’ counterclaim are hereby dismissed.
Further, “mutual mistake assumes a good faith misunderstanding which is nobody’s fault.” Maloney v. Sargisso, supra at 347. The plaintiffs’ claims for misrepresentation and violation of G.L.c. 93A are inconsistent with mutual mistake. Id; see also Ravosa v. Zais, 40 Mass.App.Ct. 47, 54 (1996) (stating that good faith misstatement provides no basis for misrepresentation damages); cf. Fernandes v. Rodrigue, 38 Mass.App.Ct. 926, 928 (1995) (holding that good faith misstatement in land sales contract not actionable as misrepresentation, 93A claim vanishes with misrepresentation claim). Accordingly, the defendants are entitled to summary judgment on Counts II and VIII.
ORDER
For the foregoing reasons, it is hereby ORDERED that the plaintiffs’ motion for summary judgment is ALLOWED as to Count VII. Summary judgment shall enter for the defendants on Counts II and VIII. Counts I, III, IV, V, and VI, and the defendants’ counterclaims are dismissed as moot.

The Uniform Commercial Code, which covers transactions involving the sale of goods, does not consider a contract for the sale of minerals to be a contract for the sale of goods if the minerals are to be severed by the buyer. G.L.c. 106 §2-107(1). Accordingly, the UCC does not apply in this case.

The McIntyres had no intention of constructing such a home. The permit was an attempt to circumvent their inability to secure an Earth Removal Permit.

One might question the sincerity of this belief given the clear language of the Special Permit that an Earth Removal Permit also was required. Nevertheless, for purposes of the mutual mistake claim, the court accepts the sincerity of the belief. Thus, McIntyre was under the mistaken impression that all permits were in place.

Slade’s belief was based upon McIntyre’s representation to him, a representation that Slade alleges was a misrepresentation. Nevertheless, as McIntyre believed the necessary permits were in place, so to did Slade believe. Alas, their shared belief was mutually mistaken. The mutuality of their mistake was acknowledged by their amended agreement which acknowledged that the permit problems arose “out of no fault of either party.”